UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                            :

UNITED STATES OF AMERICA,     :

                            :

     – *against* –            :

                            :          08 Cr. 62 (JSR)

ANTHONY STEELE,         :          <u>Electronically Filed</u>

                            :

          Defendant.

                            :

-------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANTHONY STEELE'S
PRETRIAL MOTIONS PURSUANT TO RULE 12(b), FED.R.CRIM.P.

Joshua L. Dratel, Esq.
Aaron J. Mysliwiec
Joshua L. Dratel, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
Tel: (212) 732-0707
jdratel@joshuadratel.com
amysliwiec@joshuadratel.com

*Attorneys for Defendant*
*Anthony Steele*

– *Of Counsel* –

Joshua L. Dratel
Aaron J. Mysliwiec

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.    The First Arrest and the Seizure of Physical Evidence . . . . . . . . . . . . . . . . . . . . . . . 2

B.    The Federal Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.    The Second Arrest and the Alleged Statements After
      Mr. Steele Invoked His Right to Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

D.    The Identifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT I

THE COURT SHOULD SUPPRESS ANY IDENTIFICATION TESTIMONY AND
PRECLUDE ANY IDENTIFICATION OF ANTHONY STEELE BECAUSE THEY WOULD
BE TAINTED BY UNDULY SUGGESTIVE PRETRIAL PHOTO ARRAYS . . . . . . . . . . . . . 6

A.    Identification Testimony Obtained By Unduly Suggestive Procedures
      Violates A Defendant's Right To Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B.    The Photo Arrays Were Unduly Suggestive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT II

THE PHONE CARDS ALLEGEDLY RECOVERED FROM MR. STEELE
SHOULD BE SUPPRESSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A.    The Phone Cards Were Seized Pursuant To An Unlawful Arrest . . . . . . . . . . . . . . . . 11

B.    The Seizure of the Phone Cards Cannot Be Justified
      as a Search Incident to Arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

POINT III

MR. STEELE RESERVES THE RIGHT TO MOVE FOR SUPPRESSION
OF VIDEOTAPED STATEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT IV

MR. STEELE'S TRIAL SHOULD BE SEVERED FROM HIS CO-DEFENDANT'S
TRIAL BECAUSE A JOINT TRIAL WILL RESULT IN "PREJUDICIAL SPILLOVER"
THAT WILL DENY MR. STEELE HIS RIGHT TO A FAIR TRIAL . . . . . . . . . . . . . . . . . . . 13

A.    *The Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B.    *The Prejudicial Spillover* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       1.    *Mr. Steele Will Be Prejudiced By Rule 404(b) Evidence Properly Admitted*
             *Against Co-Defendant Zachary Ballard.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       2.    *Mr. Steele Reserves The Right To Supplement This Motion To Sever On The*
             *Grounds Of Incurable* Bruton *and* Crawford *Problems* . . . . . . . . . . . . . . . . . . 17

C.    *Judicial Economy Will Not Be Impaired By Severance* . . . . . . . . . . . . . . . . . . . . . . . . . 18

POINT V

THE COURT SHOULD ORDER THE GOVERNMENT TO DISCLOSE EXCULPATORY
MATERIAL TO MR. STEELE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

**Statutes**

United States Constitution, amendment IV

United States Constitution, amendment VI

18 U.S.C. § 1951

18 U.S.C. § 924(c) and 2

Federal Rule of Criminal Procedure 12(b)

Federal Rule of Criminal Procedure 14

Fed.R.Evid. 404(b)

**Cases**

*Alabama v. White*, 496 U.S. 325, 330 (1990

*Brady v. Maryland*, 373 U.S. 83 (1963)

*Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 1624 (1968)

*Chimel v. California*, 395 U.S. 752 (1969)

*Crawford v. Washington*, 541 U.S. 36 (2004)

*Horton v. California*, 496 U.S. 128, 141 (1990)

*Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)

*Kotteakos v. United States*, 328 U.S. 750 at 772-73 (1946)

*Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986)

*Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995)

*Massiah v. United States*, 377 U.S. 201 (1964)

*Maine v. Moulton*, 474 U.S. 159,(1985))

*Neil v. Biggers*, 409 U.S. 188, 199 (1972)

*Pennsylvania v. Ritchie*, 480 U.S. 39 (1987)

*Simmons v. United States,* 390 U.S. 377, 383-84 (1972)

*Stickler v. Greene*, 527 U.S. 263, 280-1 (1999)

*Stovall v. Denno*, 388 U.S. 293, 301-01 (1967)

*Terry v. Ohio*, 392 U.S. 1, 30 (1968)

*United States v. Bagley*, 474 U.S. 667, 678 (1985)

*United States v. Branker*, 395 F.2d 881 (2d Cir. 1968)

*United States v. Cambino-Valencia*, 609 F.2d 603, 629 (2d Cir. 1979)

*United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992)

*United States v. Corr*, 543 F.2d 1042, 1052 (2d Cir. 1976)

*United States v. Eubanks*, 591 F.2d 513, 522 (9th Cir. 1979)

*United States v. Figueroa*, 618 F.2d 934, 946 (2d Cir. 1980)

*United States ex rel. Phipps v. Follette*, 428 F.2d 912 (2d Cir. 1970).

*United States v. Leonardi*, 623 F.2d 746, 755 (2d Cir. 1980)

*United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir.1990)

*United States v. Mardian*, 546 F.2d 973 (2d Cir. 1976)

*United States v. Praetorius*, 462 F. Supp. 924 (S.D.N.Y. 1978)

*United States v. Rosa*, 11 F.3d 315, 329 (2d Cir.1993)

*United States v. Rosenwasser*, 550 F.2d 806, 814 (2d Cir.)

*United States v. Saunders*, 501 F.3d 384 (4th Cir. 2007)

*United States v. Shuford*, 454 F.2d 772, 777 n. 5 (9th Cir. 1971)

*United States v. Siegel*, 717 F.2d 9, 22 (2d Cir. 1983)

*United States v. Sokolow*, 490 U.S. 1, 7 (1989)

*United States v. Sperling*, 506 F.2d 1323 (2d Cir. 1979)

*United States v. Thai*, 29 F.3d 785, 810 (2d Cir. 1994)

*United States v. Vanwort*, 887 F.2d 375, 384 (2d Cir.1989)

*Weeks v. United States*, 232 U.S. 383 (1914)

*Wong Sun v. United States*, 83 U.S. 471 (1963)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

UNITED STATES OF AMERICA,      :

               – *against* –          :

ANTHONY STEELE,           :

                    :

             Defendant.

                    :

----------------------------------------------------x

08 Cr. 62 (JSR)

(filed electronically)

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANTHONY STEELE'S PRETRIAL MOTIONS PURSUANT TO RULE 12(b), FED.R.CRIM.P.

This memorandum of law is submitted in support of defendant Anthony Steele's pretrial

motions pursuant to Rule 12(b), Fed.R.Crim.P.

### STATEMENT OF FACTS

Mr. Steele is charged in an eleven-count indictment with a conspiracy to commit several

Hobbs Act robberies, in violation of Sections 924(c) and 1951 of Title 18, United States Code,

and related substantive offenses. *See* Indictment, Declaration of Aaron J. Mysliwiec (hereinafter

"Mysliwiec Decl."), Exhibit 1. The conspiracy charge (Count One) alleges overt acts relating to

the robbery a Deluxe Storage in Brooklyn, a Sears Part and Repairs store ("Sears") in the Bronx,

and a Family Dollar store, also in the Bronx. *Id.* Mr. Steele is also charged with four counts of

committing specific robberies, in violation of 18 U.S.C. § 1951 and 2, while using a firearm each

time, in violation of 18 U.S.C. § 924(c) and 2. These specific robberies involve the Sears, the

Family Dollar store, a White Castle in the Bronx, and a Duane Reade in Manhattan. *Id.* Co-

-1-

defendant Zachary Ballard is charged with Mr. Steele in the conspiracy charge, two of the robbery charges, and two of the firearm charges.  *Id.*

<u>The First Arrest and the Seizure of Physical Evidence</u>

According to Assistant United States Attorney Benjamin Naftalis, Mr. Steele was arrested on November 21, 2007 in Brooklyn, New York.  Mysliwiec Decl. ¶ 5.  A "Nextel Boost Mobile Card" and a "Nextel SIM Card" were allegedly recovered from Mr. Steele after he was arrested. *Id.*, *see also* NYPD Property Clerk's Invoice, Mysliwiec Decl. Exhibit 2.  The government has not disclosed any information to defense counsel that indicates law enforcement personnel went beyond seizing the cards (*i.e.*, attempting to use the cards in any way).

On November 22, 2007, approximately one day after Mr. Steele's arrest, he was arraigned on a felony complaint, Docket 2007KN088502, in Kings County Criminal Court on charges relating to violations of the New York Penal Law.  Bail was set at $20,000.00 bond or $10,000.00 cash.  *See* print out of WebCrims page from December 6, 2007, Mysliwiec Decl. Exhibit 3.  Mr. Steele was assigned an attorney from the Brooklyn Defender Service at that arraignment.  *Id.*

<u>The Federal Complaint</u>

Six days after Mr. Steele's arrest in Brooklyn, the government filed a Sealed Complaint against Mr. Steele in the Southern District of New York.  *See* Sealed Complaint, Mysliwiec Decl. Exhibit 4.  In the Complaint, ATF Special Agent Robert Cucinotta stated that an armed robbery of a Sears in the Bronx occurred October 19, 2007.  *Id.*  The Sears robbery allegedly involved "two black males."  *Id.* at 2.  A victim from the Sears further described one of the robbers as "approximately 5'5" to 5'6", wearing blue jeans and brown sweatshirt and in his mid-twenties."

*Id.* The same victim described the other male as being "approximately 5'5", wearing a hooded sweatshirt and blue jeans and in his mid-twenties." *Id.* On November 26, 2007, approximately five weeks after the alleged robbery and five days after Mr. Steele was arrested in Brooklyn, two victims from the Sears were shown a photo array that included a photo of Mr. Steele. *Id.* at 3. Both victims identified Mr. Steele from the photo array. *Id.* The Complaint was sworn to before Magistrate Judge Debra Freeman November 27, 2007. *Id.*

The Second Arrest and
the Alleged Statements After Mr. Steele Invoked His Right to Counsel

Magistrate Freeman also ordered a "Warrant for Arrest" of Mr. Steele that same day. Warrant for Arrest, Mysliwiec Decl. Exhibit 5. The day after the Warrant was ordered, AUSA Naftalis was granted a writ of *habeas corpus ad prosequendum* directing that the Warden of Otis Bantum Correctional Center at Rikers Island,[1] the United States Marshal for the Southern District of New York, or any other authorized law enforcement officers, including specified ATF Special Agents, produce Mr. Steele to the custody of the Warden of the Metropolitan Correctional Center ("MCC"). Application for Writ of *Habeas Corpus Ad Prosequendum*, Mysliwiec Decl. Exhibit 6.[2] Pursuant to the writ, Mr. Steele was arrested at Rikers Island on or about December 3, 2007. Letter from AUSA Naftalis at 2, Mysliwiec Decl. Exhibit 7.

While at an NYPD station house for "arrest processing", Mr. Steele was informed that he was under arrest pursuant to a federal investigation. *Id.* He was read a waiver of rights form, and

---

[1] Mr. Steele was being held at that New York City Department of Corrections facility on bail for charges relating to violations of the New York State Penal Law brought in Kings County.

[2] AUSA Naftalis provided an unsigned copy of this Application by electronic mail on March 24, 2008.

then verbally invoked his right to counsel.  *Id.*  After invoking his right to counsel, Mr. Steele

allegedly stated to an NYPD officer "that if that officer had arrested him he would be a detective

and would have a gold shield."  *Id.*  He allegedly further stated "to law enforcement that one of

the law enforcement officer's gun was littler than a motherfucker and that his [Steele's] Hi-Point

was bigger than that."  *Id.*  Yesterday, March 24, 2008, AUSA Naftalis notified defense counsel

that there is also a video of Mr. Steele making additional statements to at least one law

enforcement officer, after the law enforcement officer makes statements to Mr. Steele and after

Mr. Steele had invoked his right to counsel.  Mysliwiec Decl. ¶ 6.  Defense counsel has not yet

been able to view this video which, apparently, was recorded on a cellular telephone.  *Id.*

<u>The Identifications</u>

According to the government's disclosures, several robbery victims have identified Mr.

Steele as a perpetrator of specific robberies.  *See* Photo Arrays, Mysliwiec Decl. Exhibit 8.

Defense counsel has been provided with the following photo arrays:

| <u>Date of ID</u> | <u>Related Robbery</u> |
|---|---|
| 11/13/07 | White Castle robbery on or about 10/19/07 |
| 11/26/07 | Sears robbery on or about 10/19/07 (2 photo arrays viewed by 2 victims) |
| 11/28/07 | Duane Reade robbery on or about 10/14/07 |
| 12/17/07 | Deluxe Storage robbery on or about 10/7/07 |
| 1/4/08[3] | Family Dollar robbery on or about 10/27/07 |

---

[3] The "Photographic Lineup" indicates that the "Date of Identification" was 1/4/07.
Mysliwiec Decl. Exhibit 8, (Bates No. 84).  Given that this alleged robbery occurred on 10/27/07,
defense counsel is assuming for purposes of this memorandum that this is a typographical error,
and that the intended date is 1/4/08.

Each photo array contains six photographs. The copies of the photo arrays provided to the defense are in black and white and it is difficult to determine the skin tone, facial hair, and other physical characteristics of the five other people in the array. In five of the photo arrays, it appears that Mr. Steele is the only person who does not have noticeable facial hair. *Id.*

The government has not provided any photo arrays that indicate a victim either viewed a photo array and could not make an identification of Mr. Steele or viewed a photo array and stated, or otherwise indicated, that Mr. Steele was not a perpetrator. In addition, to the extent that such evidence exists, the government has not provided any recordings of 911 calls to the police following the alleged robberies or any law enforcement reports or notes indicating any victims' descriptions of the perpetrators of the alleged robberies. The only information regarding a victim's description of a perpetrator that the government has disclosed to defense counsel is the Sears victim's description of the two perpetrators, which was contained in the Sealed Complaint. *See* Sealed Complaint, Mysliwiec Decl. Exhibit 4.

The government has disclosed, however, three black and white copies of photographs of the alleged perpetrators from one of the robbery locations. *See* Letter from AUSA Naftalis at 2, Mysliwiec Decl. Exhibit 7; *and see* Photographs, Mysliwiec Decl. Exhibit 9. It has also disclosed copies of eight CDs containing surveillance footage of the robberies charged in the Indictment.

# ARGUMENT

## POINT I

### THE COURT SHOULD SUPPRESS ANY IDENTIFICATION TESTIMONY AND PRECLUDE ANY IDENTIFICATION OF ANTHONY STEELE BECAUSE THEY WOULD BE TAINTED BY <u>UNDULY SUGGESTIVE PRETRIAL PHOTO ARRAYS</u>

The victims viewed unduly suggestive photo arrays that contained a photograph of Mr. Steele. The government has disclosed information regarding only one victim's description of a perpetrator. The photo array shown to that victim contained only one photograph that fit the victim's generic description; that photograph was of Mr. Steele. In addition, the government has not disclosed any information regarding how law enforcement officers conducted the photo array viewing with each victim, and what was said between law enforcement officials and victims during these interactions. Therefore, the photo arrays were unduly suggestive and any identification testimony should be suppressed and any subsequent in-court identifications should be precluded because they would be the tainted result of these unduly suggestive photo arrays.

**A.**    *Identification Testimony Obtained By Unduly Suggestive Procedures Violates a Defendant's Right to Due Process*.

The Supreme Court established the standards for the admissibility of photographic identifications in *Simmons v. United States,* 390 U.S. 377, 383-84 (1972) and *Neil v. Biggers*, 409 U.S. 188, 199 (1972). The Supreme Court has declared that identification testimony obtained by unduly suggestive procedures violates a defendant's right to due process because it may lead to an irreparably mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 301-01 (1967); *Biggers*, 409 U.S. at 196.

Additionally, a suggestive pre-trial identification may so taint subsequent out-of-court

and in-court identifications that an accused is denied due process of law if the witness is permitted to make the in-court identification. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). Once a procedure is established as impermissibly suggestive, the reliability of the subsequent in-court identification of evidence must be analyzed by weighing the indicia of reliability against the indicia of improper influence. *Id.*

The Supreme Court has recognized that even when the photo array is not unduly suggestive on its face, the "improper employment of photographs may sometimes cause witnesses to err in identifying criminals." *Simmons v. United States*, 390 U.S. 377, 383 (1968). The Second Circuit has added that "[a]n otherwise fair pretrial identification procedure may be rendered impermissibly suggestive through subsequent actions or remarks by government agents." *United States v. Thai*, 29 F.3d 785, 810 (2d Cir. 1994) (citation omitted). In *Thai*, for example, one witness was complimented by officers on a job well done. *Id.* at 810-11. Such tactics may tend to reinforce an otherwise weak or tentative identification and therefore lend a later in-court identification greater conviction than it deserves. *Id.* at 810 (*citing United States v. Leonardi*, 623 F.2d 746, 755 (2d Cir. 1980)).

Similarly, in *United States v. Saunders*, 501 F.3d 384 (4th Cir. 2007), the Fourth Circuit was confronted with a photographic array that was itself suggestive *and* the police officers' failure to advise the witness, as required by internal procedures, "that the array may not contain a photo of the person under investigation." *Id.* at 388. The police had told the witness "that they had arrested one or more suspects in the robbery." *Id.* at 391. The *Saunders* court recognized that this information could taint the identification process. "Imparting this information to the witness *can lead him to assume* that a photo of the arrested person will be in the array. The

-7-

witness, moreover, can feel pressure to make an identification, even if he is not fully confident, for fear of jeopardizing the case against the arrested suspect." *Id.* (emphasis added). Thus, the danger identified in *Saunders* was the possibility of an assumption by the witness.

Here, the only physical description given by any of the complaining witnesses and provided by the government to defense, given by any of the complaining witnesses is from the October 19, 2007 incident at Sears. One of the complaining witnesses at Sears described the perpetrator as 5'5" to 5'6" and in his mid-twenties. Yet using only this extremely vague description, the police created a six photo array that included Mr. Steele. The government has provided no indication as to how or why Mr. Steele was placed in the photo array, or if the witnesses viewed any other photos. The only logical assumption to be made is that the police suspected Mr. Steele and created a photo array around him. Under these circumstances it is easy to imagine that the danger warned against in *Saunders* was present in this case. If the Court does not grant suppression on these grounds, then an evidentiary hearing is required to determine the procedures used by the police in creating the photo array and the circumstances surrounding Mr. Steele's identification by the complaining witnesses.

**B.**     ***The Photo Arrays Were Unduly Suggestive.***

A photo array is impermissibly suggestive if the defendant is the only person in the array who matches the description given by the complaining witness. *See Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986). Based on the present disclosures, the only robbery for which a victim provided a description of a perpetrator to law enforcement was the Sears robbery. The one victim's description of the perpetrator who was later identified through a photo array as Mr. Steele was a black male, "approximately 5'5" to 5'6", wearing blue jeans and brown sweatshirt

-8-

and in his mid-twenties." The description does not indicate that the perpetrator had facial hair. Despite this fact, the photo array used with both victims from the Sears robbery includes Mr. Steele, who appears to have no facial hair[4], and photographs of *five other men with facial hair*. *See* Photo Arrays, Mysliwiec Decl. Exhibit 8. By process of elimination, then, only the photograph of Mr. Steele fit the exceedingly generic physical description of the perpetrator. This same photo array was used with five of the six viewers. In the sixth photo array, used November 13, 2007, a different photograph of Mr. Steele was used. In this photograph, Mr. Steele appears to be much younger, and not a person in his mid-twenties.

In *United States v. Concepcion*, the Second Circuit listed a number of factors used to determine whether the identification was constitutionally permissible: "[t]he fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents." 983 F.2d 369, 377 (2d Cir. 1992). The Court described a very small array as "inherently prejudicial" without mention of exigent circumstances. *Id.*

Except for one generic description that was provided by one victim, the government has provided no information regarding the descriptions of the perpetrators that any of the robbery victims provided to law enforcement officials. No 911 calls, NYPD detective reports regarding the robberies, detective notes, or any other information about the alleged crimes has been provided to the defense. In addition, the government has not provided any information about the procedures that law enforcement officers used when they conducted these specific photo arrays.

---

[4] As previously stated, the black and white copies of the photo arrays are of extremely poor quality.

-9-

For example, there is no information regarding whether a viewer was told that a suspect was in fact in the photo array, that a person in the photo array was suspected in multiple robberies, or whether a viewer was asked if he/she was certain about the chosen photograph.

The utter lack of information provided by the government warrants suppression of the identification testimony.  In the alternative, however, the Court should conduct an evidentiary hearing to evaluate by the totality of the circumstances whether any identification of Mr. Steele can be considered reliable.  Indeed, if the "totality of the circumstances" standard is to be given any meaning it requires a full examination of all the circumstances of the identification. The Second Circuit has commended the practice of conducting a hearing whenever the government intends to introduce testimony concerning pre-trial identifications.  *United States ex rel. Phipps v. Follette*, 428 F.2d 912 (2d Cir. 1970).

Therefore, it is respectfully requested that the Court suppress any identification testimony and preclude any identification of Mr. Steele as irreparably tainted by the unnecessarily suggestive photo array identifications of Mr. Steele.  In the alternative, the Court should conduct an evidentiary hearing to determine, under the totality of the circumstances, whether the identifications of Mr. Steele are reliable.

## POINT II

### THE PHONE CARDS ALLEGEDLY RECOVERED FROM MR. STEELE SHOULD BE SUPPRESSED

The government is in possession of a Nextel Boost Mobile card and a  SIM card allegedly taken from Mr. Steele when he was arrested on November 21, 2007 by New York City Police Officers.  *See* Mysliwiec Decl. at ¶ 5, and Exhibit 2.  The phone cards must be suppressed because (a) the search of Mr. Steele was the product of an unlawful arrest; or (b) even if the

search was lawful, phone cards are not the type of evidence that is properly seized pursuant to an arrest.

### A.    *The Phone Cards Were Seized Pursuant To An Unlawful Arrest.*

The Fourth Amendment protects against "unreasonable searches and seizures" and demands that all warrants shall be upon probable cause.  *U.S. Const., amend IV.*  Police officers can "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  The reasonableness of the officer's suspicion must be gauged by a totality of the circumstances. *See Alabama v. White*, 496 U.S. 325, 330 (1990).  In the event that evidence is recovered pursuant to an unlawful stop or arrest, the Supreme Court established long ago that this evidence is inadmissible as tainted fruit of that illegality.  *Wong Sun v. United States*, 83 U.S. 471 (1963).

The two phone cards seized by the government were allegedly seized November 21, 2007, during an arrest that was not based on probable cause.  It should be noted that the government has not provided any additional information regarding the circumstances of Mr. Steele's arrest.  Therefore, many of the facts surrounding his arrest, including any information used by the police to justify his seizure, are unknown.[5]  Mr. Steele respectfully requests that the Court grant this motion to suppress the phone cards because they are the fruit of an unlawful arrest.  Alternatively, Mr. Steele requests that this Court conduct an evidentiary hearing on this issue.

---

[5] Mr. Steele reserves the right to make further motions after receipt of further discovery.

**B.**     *The Seizure of the Phone Cards Cannot Be Justified As a Search Incident to Arrest.*

It is well settled law that the police may conduct a search incident to a lawful arrest.

*Weeks v. United States*, 232 U.S. 383 (1914), *accord Chimel v. California*, 395 U.S. 752 (1969).

However, the right to search is not without bounds.  A search incident to a lawful arrest is limited

to the person and to the area in the person's immediate reach.  *Chimel*, 395 U.S. at 763.  The

right to seize property is further limited to weapons, contraband, or other evidence on the person

that might be easily concealed or destroyed.  *Id.*  In order to justify a warrantless seizure of

evidence, it must be immediately apparent to the officer that the evidence is of an incriminating

nature. *Horton v. California*, 496 U.S. 128, 141 (1990).  Phone cards are quite obviously not

weapons or contraband, and they are not immediately apparent as evidence of an incriminating

nature.

Again, it must be noted that the government has not provided any information regarding

the circumstances of the November 21, 2007, arrest of Mr. Steele.  According to AUSA Naftalis,

the phone cards were allegedly recovered from Mr. Steele "after Mr. Steele was arrested."

Mysliwiec Decl. ¶5.  A phone card alone is evidence of nothing; nor is it facially incriminating in

any way.[6]  However, a phone card stores all of the information entered on a phone.  The only

reason to seize a phone card is to conduct further investigation.  Law enforcement cannot evade

the warrant requirements simply by seizing property during an arrest.

For the foregoing reasons, Mr. Steele respectfully requests that this Court grant the

---

[6] The government has given no indication that the law enforcement officers who seized the phone cards have accessed the information on the phone cards.  If the government has accessed the information, however, then Mr. Steele reserves the right to make further motions. The Fourth Amendment protects people from violations of their reasonable expectations of privacy. *Katz v. United States*, 389 U.S. 347, 361 (1967).

motion to suppress the illegally seized phone cards, or in the alternative conduct an evidentiary hearing on this matter.  *See Chimel*, 395 U.S. at 763, *and see Horton*, 496 U.S. 141.

**POINT III**

**MR. STEELE RESERVES THE RIGHT
TO MOVE FOR SUPPRESSION
OF VIDEOTAPED STATEMENTS**

Yesterday, March 24, 2008, AUSA Naftalis informed defense counsel that he was in possession of a videotaped statement made by Mr. Steele.  The video itself has not yet been made available to defense in a format that it can access, as a result the circumstances surrounding the recording and the contents are unknown.  However, AUSA Naftalis stated that the video was recorded on a cell phone while Mr. Steele was in custody and after a law enforcement officer made remarks to Mr. Steele.  Under these circumstances the statements are inadmissible because they were in response to "the equivalent of direct police interrogation" and violated Mr. Steele's Sixth Amendment right to counsel.  *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986), *accord Massiah v. United States*, 377 U.S. 201 (1964),  *Maine v. Moulton*, 474 U.S. 159,(1985), *and United States v. Rosa*, 11 F.3d 315, 329 (2d Cir.1993).

Mr. Steele reserves the right to make further motions once the video and the facts surrounding the recording are accessible to defense.

**POINT IV**

**MR. STEELE'S TRIAL SHOULD BE SEVERED
FROM HIS CO-DEFENDANT'S TRIAL
BECAUSE A JOINT TRIAL WILL RESULT
IN "PREJUDICIAL SPILLOVER" THAT WILL
DENY MR. STEELE HIS RIGHT TO A FAIR TRIAL**

The Due Process clause of the United States Constitution and Rule 14, Fed.R.Crim.P.,

-13-

protect a defendant from a joint trial if undue prejudice will result. In this case, Mr. Steele will

suffer overwhelming and incurable prejudice if he is tried jointly with his co-defendant.

Specifically, due to the unique factual and procedural circumstances, a joint trial of Mr. Steele

and his co-defendant will subject Mr. Steele to a magnitude of "prejudicial spillover" that neither

he nor the jury will be able to overcome with respect to the requisite particularized determination

whether Mr. Steele was or was not a member of the charged conspiracy and, ultimately, whether

he is or is not guilty of the conspiracy and the substantive charges against him.

Under these circumstances, a joint trial would be extremely unfair and would deprive Mr.

Steele of his right to a fair trial. A joint trial would result in a biased jury that would be unable to

compartmentalize the proof adequately. In turn, the jury's consideration of evidence relating to

Mr. Steele's co-defendant will inevitably taint the jury's consideration of Mr. Steele, influencing

it to convict him based on evidence wholly unrelated to him. In order to prevent this miscarriage

of justice, it is respectfully submitted that the Court should order a severance of Mr. Steele's trial

from that of his co-defendant.

**A.**    ***The Legal Standard.***

The decision of whether or not to grant severance is "committed to the sound discretion

of the trial court[.]" *United States v. Vanwort*, 887 F.2d 375, 384 (2d Cir.1989). Under Rule 14,

Fed.R.Crim.P.:

> If it appears that a defendant or the government is prejudiced by a
> joinder of offenses or of defendants in an indictment or
> information or by such joinder for trial together, the court may
> order an election or separate trials of counts, grant a severance of
> defendants or provide whatever other relief justice requires.

In addressing applications for severance under Rule 14, the courts have recognized that

joint trials may precipitate extreme prejudice necessitating a severance if there exists the danger that the quality and quantity of proof against one defendant is much greater than against the other.  Thus, severance is required if the character of the evidence against one defendant creates "prejudicial spillover" against the other, thereby increasing the possibility that the jury will infer one defendant's guilt based on the "enhanced likelihood of the guilt of the other defendant." *See United States v. Figueroa*, 618 F.2d 934, 946 (2d Cir. 1980).

**B.**    ***The Prejudicial Spillover.***

    **1.**    ***Mr. Steele Will Be Prejudiced By Rule 404(b) Evidence Properly Admitted Against Co-Defendant Zachary Ballard.***

Count One of the indictment charges Mr. Steele and Mr. Ballard of "combin[ing], conspir[ing], confederat[ing] and agree[ing] together and with other [sic] to commit offenses against the United States[.]"  The specified time period of the alleged conspiracy is from July 2007 through October 2007.  Yet, all of the specific robberies that Mr. Steele allegedly committed occurred in October 2007.  The indictment alleges that the first overt act of the conspiracy was an October 7, 2007, robbery, at gunpoint, of a Deluxe Storage store located at 945 Atlantic Avenue, Brooklyn, New York.  This robbery is not charged as a substantive offense.

Counts Two and Three allege that Mr. Steele along with co-defendant Zachary Ballard committed a gunpoint robbery of a Sears on October 19, 2007.  These counts correspond to the second overt act alleged in the conspiracy.  Similarly, Counts Four and Five allege that Mr. Steele along with co-defendant Zachary Ballard committed a gunpoint robbery of a Family Dollar store on October 27, 2007.  These charges correspond to the third overt act charged in the conspiracy.

Additionally, Mr. Ballard is charged in counts Six and Seven with committing a gunpoint

-15-

robbery of a Kentucky Fried Chicken on October 25, 2007 with "others known and unknown."

Mr. Steele is charged in Counts Eight and Nine and Counts Ten and Eleven with a gunpoint

robbery of a White Castle in the Bronx on October 19, 2007 and a Duane Reade in Manhattan on

October 14, 2007.

The prejudice described in *United States v. Figueroa* is very much like that Mr. Steele

would face at a joint trial.  In *Figueroa*, the Court held that co-defendants were entitled to a new

trial because they had been prejudiced by the improper admission of one of the defendant's prior

convictions.  *Id* at 947.  Additionally, a gulf in the evidence against co-defendants is a well-

recognized ground for severance particularly when, as here, "there [would be] simply too much

other evidence offered of entirely separate actions and unconnected defendants, fanning the

flames of prejudicial spillover." *United States v. Cambindo-Valencia*, 609 F.2d 603, 629 (2d Cir.

1979); *see also United States v. Mardian*, 546 F.2d 973 (2d Cir. 1976);  *United States v. Corr*,

543 F.2d 1042, 1052 (2d Cir. 1976);  *United States v. Branker*, 395 F.2d 881 (2d Cir. 1968); *and,*

*United States v. Praetorius*, 462 F. Supp. 924 (S.D.N.Y. 1978).

Nor, as the Supreme Court has acknowledged, can jury instructions be considered an

adequate safeguard against such prejudice.  As the Court pointed out in *Bruton v. United States*,

391 U.S. 123, 88 S. Ct. 1620, 1624 (1968), "[t]he naive assumption that prejudicial effects can be

overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction."

(Citation omitted).

Mr. Steele stands before the Court without any prior criminal convictions.  He enters the

current proceeding unfettered by the fear of Rule 404(b) evidence being introduced against him.

Fed.R.Evid. 404(b).  Mr. Ballard, on the other hand, has four prior convictions, two felonies and

two misdemeanors. Pursuant to Rule 404(b), the government might seek admission of evidence of Mr. Ballard's February 28, 2002, conviction for Criminal Sale of a Controlled Substance in the Third Degree, as well as his November 18, 2004, felony conviction for Criminal Possession of a Weapon in the Third Degree. These convictions could also be admissible on cross-examination if Mr. Ballard testifies in his own defense.

The introduction of these prior wrongs by Mr. Ballard would no doubt spillover and prejudice Mr. Steele. This is especially true in a case, such as this, where the co-defendants are charged with an overarching conspiracy. As the Second Circuit pointed out in *Figueroa*: "We do well to bear in mind the wise counsel of the late Judge Gurfein: 'There are few areas in which it is as important for this court to keep a watchful eye as on the admissibility of similar offenses in a case involving more than a single defendant.' *United States v. Rosenwasser*, 550 F.2d 806, 814 (2d Cir.) (dissenting opinion), *cert. denied*, 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977)."

The language in the Indictment and the specific factual allegations demand severance. If Mr. Ballard is convicted of the October 25, 2007 robbery of the Kentucky Fried Chicken, it is likely that the jury will assume that it was part of the charged conspiracy. The inclusion of the Counts that pertain only to Mr. Ballard and "others known or unknown" is a clear attempt to introduce evidence that would not ordinarily be admissible against Mr. Steele and that will serve no purpose other than confusing the jury.

### 2. *Mr. Steele Reserves The Right To Supplement This Motion To Sever On The Grounds Of Incurable* **Bruton** *and* **Crawford** *Problems.*

Currently, there is no indication that Mr. Steele's co-defendant, Mr. Ballard, has made any statement implicating Mr. Steele for any of the crimes alleged in the Indictment. Mr. Steele reserves the right to supplement this motion to sever, however, if the government discloses such

a statement at a later date.  If such a statement were disclosed, it could present incurable potential

*Bruton* and *Crawford* problems that would infect a joint trial.  *See Bruton v. United States*, 391

U.S. 123 (1968); *Crawford v. Washington*, 541 U.S. 36 (2004).

**C.    *Judicial Economy Will Not Be Impaired By Severance.***

Also, here there are not any countervailing considerations of judicial economy that would

outweigh the immense prejudice Mr. Steele faces, or which would justify a joint trial.  While

conducting two trials will in almost all cases result in some increase in time, "the fact that it is

usually more efficient to try two defendants together rather than separately does not always

outweigh a defendant's interest in a severance."  *United States v. Siegel*, 717 F.2d 9, 22 (2d Cir.

1983).

In performing this balancing test, the courts have examined several factors.  It is

appropriate to consider the timeliness of the motion, *id.*, 717 F.2d at 22, and whether a severance

would require "two relatively uncomplicated trials in place of one — not an undue burden from

the viewpoint of judicial administration" — or "a great number of otherwise unnecessary trials or

the duplication of an unusually complex trial."  *United States v. Shuford*, 454 F.2d 772, 777 n. 5

(9th Cir. 1971).

Here, these considerations all weigh in Mr. Steele's favor.  A separate trial for Mr. Steele

would be shorter and less complicated.  Moreover, any slight diminution of judicial economy is

far outweighed by the substantial considerations warranting a severance.

As the Second Circuit declared in *Figueroa, supra*,

> [w]hile a co-defendant is obliged to accept some risk of prejudice
> because of the public advantages of a joint trial, he ought not to be
> exposed to much risk in a case where the reasons that justify the
> joint trial are not significant.

-18-

618 F.2d at 946, (*citing United States v. Mardian, supra*, 546 F.2d at 980-81).

Moreover, the government's routine invocation of "judicial economy" as a code phrase for "convenience" is *not* an adequate justification for joinder. *United States v. Sperling*, 506 F.2d 1323 (2d Cir. 1979). As the Supreme Court made clear in *Kotteakos v. United States*:

> [o]ur government is not one of mere convenience or efficiency. It too has a stake, with every citizen, in his being afforded our historic individual protections, including those surrounding criminal trials.

328 U.S. 750, 772-73 (1946).[7]

In light of these compelling considerations supporting a severance, and in the absence of any countervailing justification for a joint trial with his co-defendants, it is respectfully submitted that Mr. Steele should not be exposed to the certain substantial and unfair prejudice that will result from a joint trial, and should instead be granted a severance.

## POINT V

### THE COURT SHOULD ORDER THE GOVERNMENT TO DISCLOSE EXCULPATORY MATERIAL TO MR. STEELE

It is respectfully requested that the Court order the government to provide Mr. Steele with all exculpatory evidence, information, and material known to the government relevant to the following issues:

---

[7] The Ninth Circuit reached a similar conclusion in *United States v. Eubanks*, 591 F.2d 513, 522 (9th Cir. 1979):

> We, as judges, should not shirk our duty to protect our courts from becoming mere prosecutorial mills through which criminal convictions are processed all in the name of judicial economy.

(1)    the process of compiling the six photo arrays that included the photograph of Mr. Steele;

(2)    any documents or other information, including recordings of 911 calls, that contain witness' descriptions of any perpetrator involved in the alleged robberies;

(3)    any documents or other information regarding what was said between any law enforcement officer and any witness who viewed a photo array that included a photograph of Mr. Steele;

(4)    any documents or other information regarding any law enforcement officer's interview of a witness to any of the alleged robberies; and,

(5)    color copies of the photo arrays and the surveillance photos.

The government is required to provide the accused with all information and material, known to the government, that may be favorable to the defendant on issues of guilt or punishment, without regard to materiality. *See Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Bagley*, 474 U.S. 667, 678 (1985) (prosecution's duty under *Brady* includes the obligation to disclose contingent inducements to informants which would have been helpful in cross-examination); *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) (evidence of bias or a motive to lie); *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) (individual prosecutor has responsibility to learn of any favorable evidence known to others acting on government's behalf in case); *Stickler v. Greene*, 527 U.S. 263, 280-1 (1999) (government's due process duty under *Brady* to disclose any evidence favorable to the defense includes duty to disclose impeachment evidence and material known only to the police officer and not immediately known to the prosecuting attorney).

-20-

Accordingly, the Court should order the prosecution to the produce the above-listed information and any other exculpatory information to Mr. Steele's counsel.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Court should: (1) suppress any identification testimony and preclude any identification of Anthony Steele because it would be tainted by unduly suggestive pretrial photo arrays; (2) suppress physical evidence obtained as the fruit of an unlawful arrest and/or obtained through an unlawful seizure; (3) grant Mr. Steele a severance; (4) order the prosecution to provide exculpatory evidence, discovery, information, and material known to the government to be relevant to the issues identified in this memorandum of law; and, (5) for any such other relief as the Court deems just and proper.

Dated: March 25, 2008
New York, New York

Respectfully submitted,


_____/S/_____
Joshua L. Dratel
Aaron J. Mysliwiec
JOSHUA L. DRATEL, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
(212) 732-0707
jdratel@joshuadratel.com
amysliwiec@joshuadratel.com

*Attorneys for Defendant Anthony Steele*

– Of Counsel –

Joshua L. Dratel
Aaron J. Mysliwiec