UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                :

UNITED STATES OF AMERICA,     :

                                :

     – against –                       

                                :        08 Cr. 62 (JSR)

ANTHONY STEELE,          :        <u>Electronically Filed</u>

                                :

             Defendant.        

                                :

-------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANTHONY STEELE'S
SUPPLEMENTAL PRETRIAL MOTIONS PURSUANT TO RULE 12(b), FED.R.CRIM.P.

Joshua L. Dratel, Esq.
Aaron J. Mysliwiec
Joshua L. Dratel, P.C.
2 Wall Street, 3rd Floor
New York, New York 10005
Tel: (212) 732-0707
jdratel@joshuadratel.com
amysliwiec@joshuadratel.com

*Attorneys for Defendant*
*Anthony Steele*

– *Of Counsel* –

Joshua L. Dratel
Aaron J. Mysliwiec

Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

POINT I

MR. STEELE REQUESTS ALL REMAINING DOCUMENTS AND
OTHER DISCOVERY IN THE GOVERNMENT'S CUSTODY . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT II

THE COURT SHOULD SUPPRESS ANY IDENTIFICATION TESTIMONY
AND PRECLUDE ANY IDENTIFICATION OF ANTHONY STEELE
BECAUSE IT WOULD BE TAINTED BY UNDULY SUGGESTIVE
PRETRIAL PHOTO ARRAYS AND IDENTIFICATION PROCEDURES . . . . . . . . . . . . . . . 4

POINT III

THE PROPERTY ALLEGEDLY RECOVERED FROM  MR. STEELE
SHOULD BE SUPPRESSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT IV

MOTION TO SUPPRESS STATEMENTS UNDER
*MIRANDA* AND ON VOLUNTARINESS GROUNDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Table of Authorities

Cases

*American Civil Liberties Union v. National Security Agency*,
   438 F. Supp.2d 754 (E.D. Mi. 2006), *rev'd on standing grounds*,
   493 F.3d 644 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cervantes v. United States*, 263 F.2d 800 (9th Cir., 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dickerson v. United States*, 120 S. Ct. 2326 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jackson v. Denno*, 378 U.S. 368 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jarrett v. Headley*, 802 F.2d 34 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kuhlmann v. Wilson*, 477 U.S. 436 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Maine v. Moulton*, 474 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Manson v. Brathwaite*, 432 U.S. 98 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

*Massiah v. United States*, 377 U.S. 201 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Brown*, 117 Misc. 2d 587 (N.Y.Co.Ct. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*People v. Payne*, 149 A.d.2d 542  (N.Y.A.D., 2d Dept. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People v. Tindal*, 69 A.D.2d 58 (N.Y.A.D., 2d Dept. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schnitzer v. United States*, 77 F.2d 233 (8th Cir., 1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Simmons v. United States*, 390 U.S. 377 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Smith v. United States*, 254 F.2d 751 (D.C. Cir. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Concepcion*, 983 F.2d 369 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

*United States ex rel. Cannon v. Montanye*, 486 F.2d 263 (2d Cir. 1973) . . . . . . . . . . . . . . . . . 8

*United States ex rel. Phipps v. Follette*, 428 F.2d 912 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . 5

*United States v. Ledesma,* 499 F.2d 36 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Leonardi*, 623 F.2d 746 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Licavoli*, 604 F.2d 613 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

*United States v. Mapp*, 476 F.2d 67 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Miller*, 116 F.3d 641, 679-680 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Palmieri*, 623 F.Supp 405 (S.D.N.Y. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Rivera*, 321 F.2d 704 (2d Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Rosa*, 11 F.3d 315 (2d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Sokolow*, 490 U.S. 1 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Watson*, 423 U.S. 411 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wong Sun v. United States*, 83 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

*Wrightson v. United States*, 222 F.2d 556 (D.C. Cir. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

### Statutes

U.S. Const. Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

U.S. Const. Amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 3501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,15,16

Rule 12(b), Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,8

Rule 16, Fed.R.Crim.P. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,4

New York C.P.L. § 710.60(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                              08 Cr. 62 (JSR)
UNITED STATES OF AMERICA,                    :

            – against –                      :

                                             :

ANTHONY STEELE,                              :

                                             :    (filed electronically)

            Defendant.                       :

--------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF SUPPLEMENTAL  PRETRIAL MOTIONS PURSUANT TO RULE 12(b), FED.R.CRIM.P.

This Memorandum of Law is submitted in support of defendant Anthony Steele's Supplemental Pretrial Motions pursuant to Rule 12(b), Fed.R.Crim.P.  Mr. Steele incorporates each and every argument that was set forth in the previously filed Pretrial Motions.  These Supplemental Motions are not a waiver or replacement for any of the arguments or facts set forth in those motions.

## STATEMENT OF FACTS

Mr. Steele incorporates the Statement of Facts in the previously filed Pretrial Motions.  Additional facts relevant to these Supplemental Motions are included within the "Argument" section.  Mr. Steele makes the following motions based on information that was provided in discovery on or before April 13, 2008.[1]

---

[1] At approximately at 11:00 a.m. on April 14, 2008, defense counsel received a letter from AUSA Naftalis with enclosures of ten cd's and documents, Bates stamped 206 through 263. Defense counsel has not yet had an opportunity to review these materials fully.

1

**ARGUMENT**

**POINT I**

**MR. STEELE REQUESTS ALL REMAINING
DOCUMENTS AND OTHER DISCOVERY
IN THE GOVERNMENT'S CUSTODY**

Mr. Steele requests production of all outstanding discovery pursuant to Rule 16,

Fed.R.Crim.P.  The government has failed to comply in a timely manner with this Court's

discovery deadlines.

The original discovery deadline set by this Court was February 22, 2008.  On February

19, 2008, the government provided discovery, supposedly in full compliance with Rule 16 and

this Court's order, Bates stamped 1 through 134.  *See* AUSA Naftalis Discovery Letter 1, Exhibit

7 to the Mysliwiec Declaration of March 25, 2008 ("1st Mysliwiec Decl.") Absent from this

discovery package were police reports, follow-up investigation reports (DD5), state court

complaints, 911 calls, sprint reports, or any other factual description of the alleged crimes.

On March 5, 2008, the government provided copies of Mr. Steele's telephone calls and

visitors log from the MDC and MCC, Bates stamped 145-162.  *See* AUSA Naftalis Discovery

Letter 2,  Exhibit 10 to the Mysliwiec Decl. of April 14, 2008 ("2nd Mysliwiec Decl.") More than

a month after the initial discovery deadline – and the day of the initial motion deadline for

defense – March 25, 2008, the government provided discovery Bates stamped 163 through 176.

*See* AUSA Naftalis Discovery Letter 3, Exhibit 11 to the 2nd Mysliwiec Decl.  That disclosure

consisted of a videotaped statement made by Mr. Steele December 3, 2007, and information

relating to a cell site application and search warrant.  Two days later AUSA Naftalis apparently

learned for the first time that the government was in possession of a .380 Highpoint firearm

2

allegedly recovered from Mr. Steele, and that Mr. Steele had also allegedly confessed to committing fifty (50) robberies. *See* AUSA Naftalis Discovery Letter 4, Exhibit 12 to the 2nd Mysliwiec Decl.[2]

On March 28, 2008, this Court again ordered the government to comply with its discovery obligations in full no later than Wednesday April 2, 2008. After this second Order by the Court, the government produced April 1, 2008, the State Court Complaint and Indictment, color photo copies of the photo arrays, a copy of a picture of a gun, and vouchers for various other pieces of property allegedly seized from Mr. Steele. *See* AUSA Naftalis Discovery Letter 5, 2nd Mysliwiec Decl., Exhibit 13.[3] Still missing from discovery were any other police reports, including follow-up investigation reports (commonly referred to as "DD5's"), other state court complaints, 911 calls, sprint reports, or any other factual description of the alleged crimes.

Today, on April 14, 2008, at about 11:00 a.m. defense counsel received ten compact discs of information and documents Bates stamped 206 through 263. *See* AUSA Naftalis Discovery Letter 6, 2nd Mysliwiec Decl., Exhibit 17. The government contends that the information provided includes all of the relevant 911 calls and related Sprint reports and radio runs. Given the excessively late disclosure of this information, however, the defense is unable to listen to all of the cd's or read through all of the documents include any arguments relating to them in these Supplemental Pretrial Motions.

---

[2] On the first page of the letter it is dated March 25, 2008. Defense counsel believes, however, that the letter was written March 27, 2008 because that is the date that it was faxed and the header on page two of the letter indicates this date.

[3] AUSA Naftalis also provided some of these documents in court at the March 28th appearance.

Mr. Steele reserves the right to make further motions after reviewing the discovery he received on April 14, 2008, and any discovery that the government discloses at some later date. Mr. Steele renews his request for *all* discovery pursuant to Rule 16, Fed. R. Crim. P. Specifically, Mr. Steele requests that the government provide copies of all reports, papers, documents, and data that is in the government's possession that is material to preparing the defense, the government intends to use at trial, or was obtained from or belongs to Mr. Steele. Fed.R.Crim.P. 16(a)(1)(E). This requests includes, but is not limited to, all police reports, follow-up investigation reports (commonly referred to as "DD5's" by New York Police Department ("NYPD") Officers), memo book entries, 911 calls, sprint reports, radio runs, recorded descriptions of the perpetrators, and any other facts relating to these incidents that is within the government's custody. The request also includes any information that any photo array containing a photo of Mr. Steele was shown to a witness and the witness either indicated that none of the photos were of a perpetrator or that the witness could not recognize the perpetrator from any of the photos.

## POINT II

### THE COURT SHOULD SUPPRESS ANY IDENTIFICATION TESTIMONY AND PRECLUDE ANY IDENTIFICATION OF ANTHONY STEELE BECAUSE IT WOULD BE TAINTED BY UNDULY SUGGESTIVE PRETRIAL PHOTO ARRAYS AND IDENTIFICATION PROCEDURES

The Supreme Court has articulated five factors to be applied in assessing the reliability of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). Those factors are (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of

certainty demonstrated at the confrontation, and (5) the time between the time and the confrontation.  *Id.*

A photo array is impermissibly suggestive if the defendant is the only person in the array that matches the description given by the complaining witness.  *See Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986). The Supreme Court has recognized that even when the photo array is not unduly suggestive on its face the "improper employment of photographs may sometimes cause witnesses to err in identifying criminals."  *Simmons v. United States*, 390 U.S. 377, 383 (1968). "An otherwise fair pretrial identification procedure may be rendered impermissibly suggestive through subsequent actions or remarks by government agents."  *United States v. Thai*, 29 F.3d 785, 810 (2d Cir. 1994) (citation omitted).  In *Thai*, for example, one witness was complimented by officers on a job well done.  *Id.* at 810-11.  Such tactics may tend to reinforce an otherwise weak or tentative identification and therefore lend a later in-court identification greater conviction than it deserves.  *Id.* at 810 (*citing United States v. Leonardi*, 623 F.2d 746, 755 (2d Cir. 1980)).

A *Wade* hearing is the only available pre-trial procedure for determining the reliability of the identification pursuant to *Manson*, and determining whether or not the circumstances surrounding the photo identification rendered the identification impermissibly suggestive.  The Second Circuit has commended the practice of conducting a hearing whenever the government intends to introduce testimony concerning pre-trial identifications,  *United States ex rel. Phipps v. Follette*, 428 F.2d 912 (2d Cir. 1970), and trial courts have found identification testimony inadmissible after testimony at a *Wade* hearing.  *See, e.g., United States v. Palmieri*, 623 F.Supp 405, 409 (S.D.N.Y. 1985).

Additionally, New York state courts are replete with examples of cases involving NYPD Officers in which evidence presented during the *Wade* hearing rendered an otherwise fair photo array inadmissible.  *See, e.g., People v. Payne*, 149 A.d.2d 542 , 543 (N.Y.A.D., 2d Dept. 1989)(identification testimony suppressed after *Wade* hearing testimony that officer instructed witness to look at an eight picture array because she had previously selected the wrong person); *People v. Tindal*, 69 A.D.2d 58, 59 (N.Y.A.D., 2d Dept. 1979)( identification testimony suppressed after *Wade* hearing testimony that officer had created a photo array after selecting defendant's photo from a group of six possible photos chosen by the witness and then not including any of the other possible perpetrators in the array), *and People v. Brown*, 117 Misc. 2d 587, 590 (N.Y.Co.Ct. 1983)(identification testimony rendered inadmissible by conduct of the officers).

While the Indictment charges Mr. Steele with four separate robberies and another robbery as part of the conspiracy count, the government has disclosed information about only one victim's description of a perpetrator in one of the robberies.[4]  That one victim's description of the perpetrator, who was later identified through a photo array as Mr. Steele, was a black male, "approximately 5'5" to 5'6", wearing blue jeans and brown sweatshirt and in his mid-twenties." Complaint, Exhibit 4 to the 1st Mysliwiec Decl., at 2.

The government has provided color copies of two different photo arrays that were used in the disclosed identification procedures in this case.  The first photo array ("Array 1") was purportedly shown to a witness from the Family Dollar store that was allegedly robbed October

---

[4] Defense counsel has not yet determined whether the documents it received today at 11:00 a.m. contain additional information regarding descriptions.

27, 2007.  Photo array, Exhibit 8 (Document #74) to the 1st Mysliwiec Decl.[5]  According to the government's disclosures, that array was not used in any other identification procedures. Subsequent to Mr. Steele's arrest, a second photo array ("Array 2") was created and shown to all of the other witnesses.

Array 1 was shown to a witness from the Family Dollar store on November 13, 2007. The government has not provided police reports, memo book entries, or any other statements by the witnesses at Family Dollar that would necessarily have contained a description of the alleged perpetrator.[6]  In addition, the government has not provided any information about what law enforcement officers said to the person who viewed Array 1.  Therefore, the government has not demonstrated that the photo arrays were not conducted in an unduly suggestive manner.  Mr. Steele requests a *Wade* hearing to determine the circumstances surrounding the identification.

Even without such information, it is evident that identification testimony from the witness who viewed Array 1 should be precluded because it is unduly suggestive on its face.  In Array 1, Mr. Steele is obviously the youngest person pictured in the array.  Mr. Steele is also significantly heavier than any of the other people in the array, and has a wide square jaw, unlike any of the other people in the array.  Mr. Steele also has smaller eyes and is of much lighter skin tone than all of the other people pictured in the array.

According to the information that the government disclosed, Array 2 was shown to all of the other witnesses who made an identification.  While at least five witnesses apparently viewed

---

[5] At the March 28th court appearance, the government gave the Court color copies of the photo arrays that were attached as Exhibit 8 to the 1st Mysliwiec Decl.

[6] Defense counsel has not yet determined whether the documents it received today at 11:00 a.m. contain additional information regarding descriptions.

7

Array 2 (1ˢᵗ Mysliwiec Decl., Exhibit 8), the government's disclosures include information about only one of these witnesses providing a description to a law enforcement officer before viewing the array. Based on the single description provided, identification testimony relating to Array 2 must be precluded.

As noted before, relevant characteristics from the victim's description are "black male", "brown sweatshirt," and "mid-twenties."[7] While it would seem a fairly simple task to place six photos of black men in their mid-twenties in a photo array, law enforcement officers failed to do so here. The person in photograph number three appears to be Hispanic, possibly of Dominican descent. The person in photograph number four appears to be of a mixed racial background and the distinctive appearance of his eyes sets him apart from the other people. Of the four remaining "black men", Mr. Steele is the only one wearing brown, a critical fact included in the witness's description. *See United States ex rel. Cannon v. Montanye*, 486 F.2d 263, 266-67 (2d Cir. 1973) (lineup suggestive where defendant directed to wear green sweater and witness had stated suspect wore green shirt). Additionally, Mr. Steele is the only one of the four without a moustache, he is significantly heavier than the other four, and he has a much squarer jaw than the others.[8]

In *United States v. Concepcion*, the Second Circuit listed a number of factors used to

_____

[7] Although described height is not a factor relevant to whether a photo array is unduly suggestive, law enforcement officers included a photograph of Mr. Steele in Array 2 even though he is 5'9", (PTS Report, 2ⁿᵈ Mysliwiec Decl., Exhibit 15), and the Sears victim described the perpetrator as "approximately 5'5" to 5'6"," Complaint, 1ˢᵗ Mysliwiec Decl., Exhibit 8 at 2.

[8] Before Mr. Steele filed his initial Pretrial Motions pursuant to Rule 12(b), Fed.R.Crim.P., the government had provided only black and white copies of Array 2 and it appeared that Mr. Steele was the only person in the array who lacked facial hair. Upon reviewing the color copy of Array 2, it is clear that Mr. Steele's photo showed him with some facial hair on his chin, but no moustache.

determine whether the identification was constitutionally permissible: "The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents." 983 F.2d 369, 377 (2d Cir. 1992). The Court described a very small array as "inherently prejudicial" without mention of exigent circumstances. *Id.* Under that standard, a photo array containing four black men, of which Mr. Steele is one, is too small and inherently prejudicial.

Therefore, it is respectfully requested that the Court preclude any identification of Mr. Steele as irreparably tainted by the unnecessarily suggestive photo array identifications of Mr. Steele. In the alternative, the Court should conduct an evidentiary hearing to determine, under the totality of the circumstances, whether the identifications of Mr. Steele are reliable.

**POINT III**

**THE PROPERTY ALLEGEDLY RECOVERED**
**FROM  MR. STEELE SHOULD BE SUPPRESSED**

Mr. Steele relies on the previously filed Pretrial Motion respectfully requesting suppression of the phone cards.

In addition to the phone cards allegedly recovered during his arrest on November 21, 2007, the government's additional disclosures indicate that the following additional property was allegedly seized from Mr. Steele, or an area in his dominion and control: (1) a white metal ring with clear stones; (2) a yellow metal watch with clear stones; (3) a black ski cap; (4) a black ski mask; (5) $509.00 in United States currency; (6) miscellaneous papers; (7) a .380 Highpoint handgun with ammunition; (8) a DNA sample; and, (9) a bag of marijuana. Mr. Steele seeks suppression of all of the property allegedly taken from him, or from an area in his dominion and control, because it was seized pursuant to an unlawful arrest.

9

The Fourth Amendment protects against "unreasonable searches and seizures" and demands that all warrants shall be upon probable cause.   U.S. Const., amend IV.   In the event that evidence is recovered pursuant to an unlawful stop or arrest, the Supreme Court established long ago that this evidence is inadmissible, as tainted fruit of that illegality.   *Wong Sun v. United States*, 83 U.S. 471 (1963).

The most basic constitutional rule in this area is that:

> searches conducted outside the judicial process, without prior approval by judge or magistrate, *are per se unreasonable under the Fourth Amendment* – subject only to a few specifically established and well delineated exceptions. The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' 'The burden is on those seeking exemption to show the need for it.

*Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971) (emphasis added, internal citations omitted).   *See also American Civil Liberties Union v. National Security Agency*, 438 F. Supp.2d 754, 775 (E.D. Mi. 2006), *rev'd on standing grounds*, 493 F.3d 644 (6th Cir. 2007).   In *United States v. Mapp*, the Second Circuit stated that "nothing in the Fourth Amendment remotely implies that officers who, for the purpose of arrest, have intruded, albeit lawfully, upon the privacy of an individual without an arrest warrant, may further invade that privacy by searching without a warrant, otherwise required by the Fourth Amendment, in derogation of law."   476 F.2d 67, 77 (2d Cir. 1973) (internal citations omitted).

One exception to the warrant requirement is if a police officer has probable cause to believe that the person to be searched has just committed a crime in a public area.   *United States v. Watson*, 423 U.S. 411, 418 (1976).   In addition, police officers can "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by

articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."
*United States v. Sokolow*, 490 U.S. 1, 7 (1989) (*citing Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

"An evidentiary hearing on a motion to suppress ordinarily is required if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Licavoli*, 604 F.2d 613, 621 (2d Cir. 1979)(*quoting United States v. Ledesma,* 499 F.2d 36, 39 (9th Cir. 1974). This Court noted in the March 28 , 2008, motion hearing that it is "well established Second Circuit law" that when a search takes place in the context of an arrest, then the burden shifts to the defendant to put forth facts that contest the legality of the arrest. While it is true that a "hearing is not required if the grounds for suppression consist solely of conclusory allegations of illegality", *Licavoli*, 604 F.2d at 621, the government still "has the burden of showing probable cause to believe that a crime had been or was being committed both in obtaining a warrant prior to arrest and in sustaining the legality of an arrest without a warrant." *United States v. Rivera*, 321 F.2d 704, 708 (2d Cir. 1963) (citing to *Wong Sun v. United States*, supra; *Wrightson v. United States*, 222 F.2d 556 (D.C. Cir. 1955); *Cervantes v. United States*, 263 F.2d 800 (9th Cir., 1959); *Smith v. United States*, 254 F.2d 751 (D.C. Cir. 1958). *But cf. Schnitzer v. United States*, 77 F.2d 233 (8th Cir., 1935)).

As detailed below, the government has failed to meet this burden and as a result the seized property must be suppressed. Mr. Steele has provided a Declaration along with these Supplemental Pre-Trial Motions. According to Mr. Steele, when a NYPD Officer arrested him November 21, 2007, he was in the area of the corner of Troy Avenue and Sterling Place in Brooklyn, New York. Steele Decl. at ¶ 1. Mr. Steele was walking on the street at about 12:35

11

p.m. *Id.* He had not committed a robbery. *Id.* Despite those facts, a NYPD Officer went up to Mr. Steele and, in sum and substance, told Mr. Steele to stop. *Id.* The Officer then searched Mr. Steele and arrested him. *Id.* Therefore, Mr. Steele has raised "'sufficiently definite, specific, detailed, and nonconjectural [facts] to enable the court to conclude that contested issues of fact'" exist that go to the validity of the search and the seizure on November 21, 2007. *See Licavoli*, *supra,* (*quoting Ledesma,* 499 F.2d at 39).

Other circumstances leading up to Mr. Steele's arrest are largely unknown. In discovery on April 1, 2008, the government provided a New York City (Kings County) Criminal Court Complaint and subsequent New York State Indictment on charges stemming from incidents that occurred September 17, 2007 and November 21, 2007. *See* Kings County Complaint, 2nd Mysliwiec Decl., Exhibit 16. While it is anticipated that the government will seek to rely on the Complaint and Indictment to demonstrate that there was probable cause to make a warrantless arrest of Mr. Steele, the mere existence of these documents does not alleviate the necessity of showing the legality of the arrest prior to admission of the seized evidence.[9]

Moreover, the facts in the Complaint do not suffice to establish probable cause for the arrest. The Complaint states that at about 12:25 p.m. Mr. Steele and an "unapprehended other" entered a store located at 201 Troy Avenue in Kings County. *Id.* According to the Complaint, Mr. Steele and the other person removed currency from the store register and then fled. *Id.* At 12:35 p.m., ten minutes after the alleged robbery, Police Officer Frank Dantuono stopped Mr.

---

[9] All criminal cases in New York State necessarily begin with the filing of a complaint yet under New York State law a trial court is required to conduct an evidentiary hearing to make findings of fact essential to the determination of any motion to suppress, as long as it is based on facts that support the ground alleged. New York C.P.L. § 710.60(4).

12

Steele (presumably alone as the "other" remained unapprehended) on the corner of Troy Avenue and Sterling Place. *Id.* The corner of Troy Avenue and Sterling Place is only one block from 201 Troy Avenue. *See* Web page printout from Google Maps, 2nd Mysliwiec Decl., Exhibit 17.

That description fails to provide information that, without more, establishes probable cause for the arrest. Moreover, the bare accusation in the Complaint defies logic: that in ten minutes of "flight" from the store Mr. Steele would have only traveled one block's distance. The government's disclosures do not include any additional information that would contribute to a finding of probable cause for Mr. Steele's arrest.

For the foregoing reasons, Mr. Steele respectfully requests that this Court grant the motion to suppress the illegally seized property identified in this Supplemental Motion and the property identified in the first Pretrial Motions, or in the alternative, conduct an evidentiary hearing on this matter.

## POINT IV

### MOTION TO SUPPRESS STATEMENTS UNDER *MIRANDA* AND ON VOLUNTARINESS GROUNDS

Mr. Steele requests that this Court conduct an evidentiary hearing to determine the admissibility of any alleged statements. He moves to suppress any statements taken in violation of *Miranda*, and requests that the government demonstrate that his statements were knowing, intelligent, and voluntary. In *Dickerson v. United States*, 120 S. Ct. 2326 (2000), the Supreme Court held that *Miranda* warnings are not merely prophylactic; rather, they are of constitutional magnitude. *Id.* at 2336 ("we conclude that *Miranda* announced a constitutional rule"). A defendant has a Constitutional right to object to the voluntariness of statements and then have "a fair hearing and a reliable determination on the issue of voluntariness." *Jackson v. Denno*, 378

13

U.S. 368, 377 (1964).

According to Mr. Steele, he asked for a lawyer when he was arrested on November 21, 2007, and when he was arrested on December 3, 2007. Steele Decl. at ¶¶ 3-5. Mr. Steele did not make any statements to the police before he was taken to the precinct on November 21st. *Id.* at ¶ 3. Despite asking for a lawyer upon entering the precinct, police officers questioned him. *Id.*

Similarly, when Mr. Steele was taken from Rikers Island on December 3rd and placed in federal custody, he also asked for a lawyer upon being brought to an officer for the United States Bureau for Alcohol, Tobacco and Firearms ("ATF"). *Id.* at ¶ 4. Despite asking for a lawyer, law enforcement officers asked Mr. Steele questions. *Id.* Mr. Steele did not make any statements to these officers before he was brought to that office. *Id.* At some point later that day, one of the law enforcement officers told Mr. Steele to speak while he videotaped Mr. Steele on his cell phone and he also asked Mr. Steele a question about one of the other law enforcement officers. *Id.*

On March 24, 2008, AUSA Naftalis informed defense counsel that he was in possession of a videotaped statement made by Mr. Steele. According to AUSA Naftalis's 1st Discovery Letter, Mr. Steele "was informed that he was under arrest pursuant to a federal investigation." 1st Mysliwiec Decl., Exhibit 7 at 2. After being so informed, Mr. Steele "was read a waiver of rights form, and Steele then verbally invoked his right to counsel." *Id.* Yet, despite Mr. Steele's invocation of that right, the video evidences that a police officer requested that Mr. Steele "speak . . . speak," and asked Mr. Steele a follow up question once Mr. Steele began speaking. Declaration of Alice Fontier ("Fontier Decl.") at ¶ 4. In addition, on March 24, 2008, at a meeting between defense counsel and AUSA Naftalis at the U.S. Attorney's Office, an ATF

Special Agent who was present stated to defense counsel, in sum and substance, that Mr. Steele

was a person who would not say anything at first, but would start to give pieces of information if

a person kept "going back at him", or words to that effect. *Id.* at ¶ 5.[10]

On April 1, 2008, AUSA Naftalis provided notice of additional statements allegedly

made by Mr. Steele during the course of his November 21, 2007, arrest. The government does

not allege that *Miranda* warnings were ever given to Mr. Steele, and they cannot possibly

contend that Mr. Steele was not under custodial arrest. For that matter, that government has not

provided any information concerning the circumstances under which the statements were

allegedly made by Mr. Steele. Under these circumstances, any statements allegedly made by Mr.

Steele on either November 21st or December 3rd are inadmissible as a violation of his *Miranda*

rights and his Sixth Amendment right to counsel because he asserted his right to counsel and all

questioning should have ceased. *See Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986), *accord*

*Massiah v. United States*, 377 U.S. 201 (1964), *Maine v. Moulton*, 474 U.S. 159,(1985), *and*

*United States v. Rosa*, 11 F.3d 315, 329 (2d Cir.1993); *see also  Edwards v. Arizona*, 451 U.S.

477, 484-85 (holding that when an accused in custody requests counsel, questioning must cease

until counsel is present); *and see United States v. Miller*, 116 F.3d 641, 679-80 (2d Cir. 1997)

(same).

If this Court does not suppress Mr. Steele's alleged statements on the basis of these

Supplemental Pre-trial Motions alone, then Mr. Steele asks, in the alternative, for a pre-trial

hearing to determine the voluntariness of his statements and whether they were obtained in

---

[10] Upon information and belief, the Agent who said this to defense counsel was
ATF/NYPD Task Force Officer/Detective Peter Shanhai.  Fontier Decl. at ¶ 5.

violation of his Sixth Amendment right to counsel.  Section 3501(a)of United States Code Title

18 requires a trial judge, outside the presence of the jury, to determine the voluntariness of any

statement made by the defendant prior to its use in evidence.  In determining the voluntariness of

the statements the trial judge must consider (1) the time elapsing between arrest and the

statement, (2) whether the defendant knew the nature of the charge, (3) whether the defendant

was apprised of his right to remain silent and the consequences of waiving that right, (4) whether

the defendant had been advised of his right to counsel, and (5) whether or not the defendant was

without the assistance of counsel at the time of questioning.  18 U.S.C. § 3501(b).  An

evidentiary hearing is required to determine these factual issues and the voluntariness of the

alleged statements.

## Conclusion

For the foregoing reasons, it is respectfully submitted that the Court should, in addition to

the relief requested in the Pretrial Motions: (1) order the government to provide all remaining

discovery; (2)  suppress any identification testimony and preclude any identification of Anthony

Steele because it would be tainted by unduly suggestive pretrial photo arrays;  (3)  suppress

physical evidence obtained as the fruit of an unlawful arrest and/or obtained through an unlawful

seizure;  and (4)  conduct an evidentiary hearing to determine the voluntariness of any statements

allegedly made by Mr. Steele on November 21, 2007 after he was arrested in Brooklyn by an

NYPD officer.

16

Dated:          April 14, 2008
                New York, New York

                              Respectfully submitted,


                              _____/S/_____
                              Joshua L. Dratel
                              Aaron J. Mysliwiec
                              JOSHUA L. DRATEL, P.C.
                              2 Wall Street, 3rd Floor
                              New York, New York 10005
                              (212) 732-0707
                              jdratel@joshuadratel.com
                              amysliwiec@joshuadratel.com

                              *Attorneys for Defendant Anthony Steele*

– Of Counsel –

Joshua L. Dratel
Aaron J. Mysliwiec

17