

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 24, 2008

**BY HAND AND ECF**

The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

>  Re:  **United States v. Ballard & Steele,**
>       **08 Cr. 62 (JSR)**

Dear Judge Rakoff:

   The Government respectfully submits this letter-brief in opposition to the pretrial motions of defendant Anthony Steele.[1]  For the reasons to follow, all (but one) of defendant Anthony Steele's motions are without merit and should be denied without an evidentiary hearing.  The Government concedes, however, that an evidentiary hearing is required to resolve the facts relevant to the admissibility of the defendant's November 21, 2007 statements.

   Further, the Government respectfully requests that the conference call with Chambers, presently scheduled for Wednesday, April 30, at 11:00 a.m., be rescheduled for later that afternoon, or any other time earlier that week.  The undersigned will be appearing before the Court of Appeals on Wednesday morning.

### Background

**A.   Offense Conduct**

   Defendants Zachary Ballard and Anthony Steele have been charged in an eleven-count Indictment, 08 Cr. 62 (JSR).  Count One charges Ballard and Steele with conspiracy to commit

---

   [1] Defendant Zachary Ballard filed no motions.

Hon. Jed S. Rakoff
April 24, 2008
Page 2

Hobbs Act robbery while brandishing firearms, in violation of 18 U.S.C. § 1951. Counts Two and Three charge Ballard and Steele with substantive violations of Hobbs Act robbery while brandishing firearms related to the armed robbery of a Sears located in Bronx, New York, in violation of 18 U.S.C. §§ 1951, 924(c), and 2. Counts Four and Five charge Ballard and Steele with substantive violations of Hobbs Act robbery while brandishing firearms related to their armed robbery of a Family Dollar store located in Bronx, New York, in violation of 18 U.S.C. §§ 1951, 924(c), and 2. Counts Six and Seven charge Ballard with substantive violations of Hobbs Act robbery while a brandishing firearm related to the armed robbery of a Kentucky Fried Chicken located in Bronx, New York, in violation of 18 U.S.C. §§ 1951, 924(c), and 2. Counts Eight and Nine charge Steele with substantive violations of Hobbs Act robbery while brandishing a firearm related to the armed robbery of a White Castle Restaurant in New York, New York, in violation of 18 U.S.C. §§ 1951, 924(c), and 2. Counts Ten and Eleven charge Steele with substantive violations of Hobbs Act robbery while brandishing firearms related to the armed robbery of a Duane Reade located in New York, New York, in violation of 18 U.S.C. §§ 1951, 924(c), and 2.

Both Ballard and Steele are presently remanded.

## Discussion

### A. Defendant's Discovery Requests Should be Denied

Defendant Steele demands production of "all outstanding discovery" and baldly asserts that "[t]he government has failed to comply in a timely manner with this Court's discovery deadlines." (Memorandum of Law in Support of Defendant Anthony Steele's Supplemental Pretrial Motions Pursuant to Rule 12(b), Fed. R. Crim. P. dated April 14, 2007 ("Def."), at 2). The defendant then recounts, in laborious detail, the Government's Rule 16 disclosures and purported discovery violations, and demands "any other police reports, including follow-up investigation reports (commonly referred to as "DD5's"), other state court complaints, 911 calls, sprint reports, or any other factual description of the alleged crimes." (Def. at 3). As set forth below, these claims are all smoke and no fire; and because the defendant's respective discovery requests are either unfounded, moot, premature, or not required by any statute or the Federal Rules of Criminal Procedure, the Government respectfully submits that these requests be denied.

Hon. Jed S. Rakoff
April 24, 2008
Page 3

      The Government understands and embraces its Rule 16 obligations, and has complied with them -- and more. Indeed, the Government made its preliminary Rule 16 disclosure <u>early</u>; and it has made supplemental Rule 16 disclosures as discoverable material was within the Government's control and/or the Government became aware of the material's existence, consistent with its continuing discovery obligations. <u>See</u> Rule 16(c), Fed. R. Crim. P.[2] The defendant fails to understand that Rule 16 is a continuing obligation, with which the Government has complied.

      In any event, defendant's specific demands for additional discovery are unavailing. Pursuant to 18 U.S.C. § 3500, "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness . . . shall be the subject of subpoena, discovery or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). The Federal Rules of Criminal Procedure also do not authorize "the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500" nor the "discovery or inspection of reports, memoranda, or other internal government documents made by ... [any] government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2); <u>see also</u> <u>United States</u> v. <u>Koskerides</u>, 877 F.2d 1129, 1133-34 (2d Cir. 1989). Police reports, "DD5s," and police memo books clearly fall into this undiscoverable category. <u>See</u>, e.g., <u>United States</u> v. <u>Giovanelli</u>, 747 F. Supp. 915 (S.D.N.Y. 1989) (CBM) (recognizing that police reports, agent reports, DD5s, and memo books are 3500 Material). And Rule 16 provides no carve-out for the disclosure of unspecified "state court complaints" in a federal criminal case.

      To date, the Government has disclosed everything of which it is aware that is arguably <u>Brady</u> material. The Government is mindful of its continuing obligation to disclose <u>Brady</u> material, and will produce any additional such material as soon as the Government learns of its existence. Because the Government has made a good-faith representation to the Court and defense counsel that it recognizes and has complied with its disclosure obligations under <u>Brady</u>, there is nothing for this Court to order. <u>See</u>, e.g., <u>United States</u> v. <u>Gallo</u>, No. 98 Cr. 338 (JGK), 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying

---

  [2] Of course, the Government recognizes that its obligation to provide discovery is of a continuing nature, and the Government will, if it obtains additional evidence, supplement its production of material required by Rule 16(a)(1)(A) and any other provision of Rule 16, for that matter.

defendant's motion to compel production of Brady material based on Government's representations that "it is aware of its obligations under Brady . . . and will produce any Brady material to the defense well before trial"); United States v. Yu, No. 97 CR 102 (SJ), 1998 WL 57079, at *4 (E.D.N.Y. Feb. 5, 1998) (denying defense request that Government provide early disclosure of Brady material because Government "acknowledged its continuing obligation to provide exculpatory material upon its discovery" and assured that it would comply with that obligation); United States v. Perez, 940 F. Supp. 540, 553 (S.D.N.Y. 1996) (same).

Similarly, defendant Steele's request for additional information including the names of the victims in the case should also be denied. As noted, the Government has already fulfilled its Brady obligations by notifying defendants of potentially exculpatory information. Any further disclosure would require revealing the identities of the victims in this case, who are Government witnesses. As the Second Circuit has explained, "Federal Rule Criminal Procedure 16 does not require the Government to furnish the names and addresses of its witnesses." United States v. Bejasa, 904 F.2d 137, 139 (2d Cir. 1990). Nor does any other rule or statute obligate the Government to disclose the identity of its prospective witnesses. See United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980) ("[T]he prosecution [is] under no obligation to give [the defendant] advance warning of the witnesses who would testify against him" (citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977))).

Furthermore, disclosure of such identifying information far in advance of trial would expose the victims in this case to serious danger. If the Court desires, the Government will provide the Court in camera with more details on why the Government believes the victims in this case would be endangered by premature disclosure of their identities to defendants. See, e.g., United States v. Goldman, 439 F. Supp. 337, 350-51 (S.D.N.Y. 1977) (declining to order Government to provide identity of witnesses, because "[o]rdinarily, Brady material consists of documents or statements already in esse and therefore not subject to the danger of alteration. A witness, on the other hand, might be subject to bribery, intimidation, or other foul play; the integrity of the witness testimony cannot be guaranteed.").

Lastly, as to the discovery sent to the defendants via Federal Express on April 11, 2008 (consisting of 911 calls, Sprint runs, and/or radio runs), the Government produced said discovery as soon as it was made available by the New York City Police Department, Communications Division. Given the substance of this discovery, the Government requests that the Court

Hon. Jed S. Rakoff
April 24, 2008
Page 5

postpone any <u>in limine</u> briefing or ruling upon the admissibility of said evidence to a date closer to trial.

### B. Defendant Steele's Motion to Suppress Identifications Should be Denied Without a Hearing

Defendant has renewed his motion to suppress the photo arrays and identifications because they are "irreparably tainted by the unnecessarily suggestive photo array identifications of Mr. Steele" or, alternatively, to conduct an evidentiary hearing to determined the identifications are "reliable." (Def at 9). Defendant then goes on to argue that the identification testimony of those witnesses who viewed one of the photo arrays should be suppressed because it would be tainted based upon the defendant's age, weight, jaw shape, eye size, and skin tone. (Def. at 7). This motion should, again, be denied without a hearing.

#### 1. Defendant Steele Has Failed to Meet His Moving Burden to Require Any Evidentiary Hearing

As this Court well knows, and as It noted at the March 28, 2008 pretrial conference, a defendant seeking the suppression of evidence is not automatically entitled to an evidentiary hearing on his claim, but must first "state sufficient facts which, if proven, would [require] the granting of the relief requested." <u>United States</u> v. <u>Kornblau</u>, 586 F. Supp. 614, 621 (S.D.N.Y. 1984); <u>see United States</u> v. <u>Culotta</u>, 413 F.2d 1343, 1345 (2d Cir. 1969); <u>United States</u> v. <u>Jailall</u>, 2000 WL 1368055, at * 8-9 (S.D.N.Y. 2000); <u>United States</u> v. <u>Belin</u>, 2000 WL679138, at * 5 (S.D.N.Y. 2000). To meet this burden, a defendant must present his claim through an affidavit of an individual with personal knowledge of the relevant facts. <u>See United States</u> v. <u>Gillette</u>, 383 F.2d 843, 848-49 (2d Cir. 1967); <u>United States</u> v. <u>Viscioso</u>, 711 F.Supp. 740, 745 (S.D.N.Y. 1989). In such an affidavit, the defendant must show "that disputed issues of material fact exist before an evidentiary hearing is required." <u>Viscioso</u>, 711 F.Supp. at 745 (citation omitted). Moreover, the allegations must be definite, specific, detailed and non-conjectural. <u>See id</u>. Until a preliminary assertion of relevant facts is made by an individual with personal knowledge, a defendant is not entitled to an evidentiary hearing. <u>Kornblau</u>, 586 F. Supp. at 622.

Here, defendant Steele's suppression motion contesting the identification of the defendant fails to rely upon any sworn affidavit of an individual with <u>personal</u> knowledge of the relevant facts. An attorney's affidavit or affirmation regarding facts about which he has no personal knowledge is insufficient to

Hon. Jed S. Rakoff
April 24, 2008
Page 6

justify a suppression hearing. See Gillette, 383 F.2d at 848 (no issue of fact warranting suppression hearing where only evidence was in an attorney's affidavit); United States v. Ruggiero, 824 F. Supp. at 393 (attorney affidavit based on information and belief is "completely inadequate to raise a factual issue justifying a hearing"); United States v. Caruso, 684 F. Supp. 84, 87 (S.D.N.Y. 1988) (same).

On this basis alone, this Court can decide this suppression motion on the papers.

> 2. **Defendant Steele's Motion for Suppression of Identification Evidence And/Or Identification Evidence Affected by or Derived From the Photo Arrays, or Alternatively for a Hearing, Should Be Denied**

Even if the Court were to overlook the lack of any affidavit of an individual with personal knowledge, this Court should still deny defendant's motion on the papers.

> a. **Applicable Law**

When assessing challenges to identification procedures, courts follow a two-step process. First, the reviewing court must determine whether the pretrial identification procedure was "unduly suggestive of the suspect's guilt." United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990); see also Jarrett v. Headley, 802 F.2d 34, 40-41 (2d Cir. 1986) (holding that an identification procedure violates due process if it "'is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification'") (quoting Simmons v. United States, 390 U.S. 377, 384 (1969)). In a case such as this one, improper suggestion can result from either the composition of a photo array and/or from the manner in which law enforcement authorities conducted an identification procedure. See, e.g., United States v. Padilla, No. S1 94 Cr. 313 (CSH), 1994 U.S. Dist. LEXIS 17395, at *20 (Dec. 5, 1994). If the Court finds that the pretrial identification procedure was not suggestive, no further inquiry is required. Even if the pretrial procedure is deemed suggestive, the Court still may allow a subsequent in-court identification if it finds the in-court identification to be "independently reliable rather than the product of the earlier suggestive procedures." Maldonado-Rivera, 922 F.2d at 973; see also United States v. Thai, 29 F.3d 785, 808 (2d Cir. 1994) (collecting cases).

In determining whether a photo array is impermissibly suggestive, courts assess "whether the picture of the accused,

matching descriptions given by the witness, so stood out from all of the other photographs as to 'suggest to an identifying witness that [that person] was more likely to be the culprit.'" Jarrett, 802 F.2d at 41 (quoting United States v. Archibald, 734 F.2d 938, 940 (2d Cir. 1984) (alteration in original)). Courts in this Circuit have held that a photo array containing six or more photographs is sufficiently large so as not to be unduly suggestive. See, e.g., Thai, 29 F.3d at 808 (collecting cases). Courts have found photo arrays suggestive in circumstances where, for example, the defendant is the only one in the array with the skin color described by the witness, see United States v. Fernandez, 456 F.2d 638, 641-43 (2d Cir. 1972), or where the defendant is the only one with the specific hairstyle described by the witness, see United States v. Eltayib, 88 F.3d 157, 166-67 (2d Cir. 1996). However, "[t]he due process clause does not require law enforcement officers to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility." United States v. Bubar, 567 F.2d 192, 199 (2d Cir. 1977); see also Thai, 29 F.3d at 808 (finding array was not improperly suggestive where it contained photographs of individuals all of the same sex, race, hair color, and approximate age as defendant, even though there were other minor differences).

When requesting an evidentiary hearing challenging the suggestiveness of an identification procedure, defendants must meet the burden of stating "'sufficient facts which, if proven, would [] require [] the granting of the relief requested.'" United States v. Richardson, 837 F. Supp. 570, 573 (S.D.N.Y. 1993) (quoting United States v. Culotta, 413 F.2d 1343 (2d Cir. 1969)). No evidentiary hearing is required where defendants "fail to make a threshold showing of suggestiveness." United States v. Ruggiero, 824 F. Supp. 379, 396 (S.D.N.Y. 1993) (denying defendants' request for pretrial hearing and finding that defendants could challenge identification procedure instead through the "time-honored process of cross-examination"); see also United States v. McCallister, No. 00 Cr. 482 (LMM), 2000 U.S. Dist. LEXIS 16955, at *2 (S.D.N.Y. Nov. 22, 2000) ("In the absence of a sufficient pretrial showing of impropriety, which has not been made, exploration of the circumstances surrounding the identification procedures may properly be left to cross-examination at trial.") (internal quotation marks omitted); United States v. Song, No. 95 Cr. 129 (KMW), 1995 U.S. Dist. LEXIS 18399, at *17-18 (S.D.N.Y. Dec. 13, 1995) (denying defendants' request for pretrial hearing where "[d]efendants have made no showing that the procedures used in showing the array to any witnesses were unduly suggestive, and any questions concerning the reliability of witnesses' identifications can

Hon. Jed S. Rakoff
April 24, 2008
Page 8

properly be raised on cross-examination"); Padilla, 1994 U.S. Dist. LEXIS 17395, at *28 (denying pretrial hearing to explore circumstances of identification procedures because defendants' "speculations [that such procedures may have been suggestive] were insufficient to warrant a pre-trial hearing").

   3.   **Discussion**

        Defendant Steele challenges everything about the photo arrays, yet nothing.  Based on mere speculation, and without reliance on any affidavit of an individual with close to first-hand knowledge, the defendant asserts (without legal support) that the Government must "demonstrate[] that the photo arrays were not conducted in an unduly suggestive manner."  (Def. at 7). Defendant facially challenges the substance of the photo arrays that were used in this case, and makes no factual showing to support his claim that the identification procedures in this case were impermissibly suggestive.  Rather, he simply states that a photo array was used and requests suppression based on that fact, or in the alternative, requests a hearing to explore the circumstances of the identification procedure.  (See Def. 7-9). Under such circumstances, the defendant's requests should be denied.

        As set forth above, defendants are required to make a threshold factual showing of impropriety or suggestiveness in order to merit an evidentiary hearing.  See, e.g., Ruggiero, 824 F. Supp. at 396.  The mere use of a photo array is not inherently suggestive, and such use will not prevent admission of the pre-trial identification or an in-court identification by the witness.  See Simmons v. United States, 390 U.S. at 384; Richardson, 837 F. Supp. at 573.  When a threshold showing of suggestiveness is not made, defendants should not be granted an evidentiary hearing simply in order that they may explore the circumstances of the identification procedures.  Such exploration may be conducted through cross-examination at trial.  See, e.g., McCallister, 2000 U.S. Dist. LEXIS 16955, at *2; Song, 1995 U.S. Dist. LEXIS 18399, at *17-18; United States v. Lee, 862 F. Supp. 1129, 1131, 1133 (S.D.N.Y. 1994) (denying defendants' request for pretrial hearing "to explore the possibility" that the identification procedures were suggestive "[w]here, as here, defendants' motions were based entirely on speculation whether the procedures used in identifications from photo arrays might have been suggestive, and defendants did not challenge the arrays themselves"); Ruggiero, 824 F. Supp. at 396.

        Moreover, courts have denied such requests for hearings in cases involving violence, such as the instant case, because such pretrial hearings would prematurely identify government

witnesses and potentially subject those witnesses and their families to danger. See United States v. Cherry, No. S1 94 Cr. 313 (CSH), 1995 U.S. Dist. LEXIS 1750, at *6 (S.D.N.Y. Feb. 15, 1995) (denying request for pretrial hearing where "the government has a specific, legitimate concern for the safety of lay witnesses," and because "[g]enerally, the government is not required to identify its witness or disclose their statements prior to trial; and that rule has frequently been applied to defense requests for information concerning identification procedures"); see also United States v. Lee, 862 F. Supp. at 1133.

Defendant Steele claims that the photo array in this case was suggestive because (as to "Array 1") "Mr. Steele is obviously the youngest person in the array, . . is significantly heavier, . . has a wide square jaw, . . has smaller eyes and is of much lighter skin tone than all of the other people in the array." (Def. at 7). As to "Array 2," the defendant assumes, without factual support, that it was developed "[b]ased on the single description [provided in the complaint]," and takes issue with the race of the six individuals pictured, the "distinctive appearance of [the defendant's] eyes," the defendant's brown clothing, the defendant's facial hair, the defendant's relative weight, and the defendant's jaw size. (Def. at 8).

The two photo arrays in question were not suggestive under the governing standards. Where, as here, the photos in the array are substantially similar to one another in almost every respect, minor differences among the photographs do not lead to an inference of impermissible suggestiveness. See, e.g., United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994) (holding that array was not suggestive where defendant's photo was "brighter" and "more close-up" than the others, where each of the photos were in color, taken from the same angle, and depicted men of the roughly the same age and coloring, all of whom had moustaches); see also United States v. Fletcher, 121 F.3d 187, 194-95 (5th Cir. 1997) (finding array non-suggestive even where defendant was only person wearing suit and tie in array, when witness had identified defendant as wearing suit and tie during crime because in all other respects, photos in array were similar); Archibald, 734 F.2d at 940 (finding no suggestiveness where only defendant's photo bore an identification plate showing he was arrested in Manhattan); United States v. Marchand, 564 F.2d 983, 995 (2d Cir. 1977) (holding that differences in sizes of photos in array and fact that defendant's photo was "somewhat marred by glare" did not make array unnecessarily suggestive); Bubar, 567 F.2d at 198-99 (holding that array was not suggestive when defendant argued that the "focus and contrasts were sharper in his photograph," and a "narrow strip of light not in the other photographs ran

Hon. Jed S. Rakoff
April 24, 2008
Page 10

across the field above his head"); United States v. Lincoln, 494 F.2d 833, 839-40 (9th Cir. 1974) (holding array not suggestive even where defendant's photo was the only one of nine that was not in color); United States v. Harrison, 460 F.2d 270, 271 (2d Cir. 1972) (holding that array was not impermissibly suggestive even though defendant's photo was only one in array that was single, front-view photo and others were double, front-and-side view photos); see generally United States v. McGee, No. 99 Cr. 150E(F), 2000 U.S. Dist. LEXIS 15066, at *35 (W.D.N.Y. May 26, 2000) ("If other physical characteristics of the individuals in a photo array are sufficiently similar, a single, stark, difference in appearance may not give rise to undue suggestiveness.")

Here, the difference among the photographs in the arrays are, as the Court has already recognized, truly minor. As to "Array 1," all the individuals are depicted in a frontal, close-up view. All the photographs are of an African-American male with medium skin-tone, light moustache, dark-colored eyes, and closely cropped hair. The individuals all appear to be the same approximate age. The individuals are, except for individual 1 (not the defendant), wearing hooded sweatshirts. The photographs all have similar colored backgrounds: varying shades of grey. As to "Array 2," again, the defendant's arguments fall well short of the mark. All the individuals are depicted in a frontal, close-up view. All the photographs are of a male with medium skin-tone, light moustache and facial hair, dark-colored eyes, closely cropped hair, and similar facial expression. The individuals all appear to be the same approximate age. The individuals are all pictured wearing clothing with similar collar-types. All of the photographs, save individual 2 (not the defendant) are pictured against similar colored backgrounds.[3]

There are a number of minor differences among the photographs in the two arrays, but none of those differences lead to a conclusion that the array was "impermissibly suggestive."[4]

---

[3] The defendant also posits *how* the photo arrays were assembled based on a fact-less set of assumptions. (See Def. at 6-8). From that wobbling position, he also seems to argue that the photo arrays are improper. Given the defendant's failure to make a showing of impropriety or suggestiveness, any examination regarding the examination procedures can be explored through the "time-honored process of cross-examination" at trial. Ruggiero, 824 F. Supp. at 396.

[4] Should the Court determine that the arrays were suggestive, the Government would request a separate and subsequent inquiry into whether, despite that conclusion, any

### C. Defendant Steele's Motion to Suppress the Physical Evidence Recovered Following His November 21, 2007 Arrest

Defendant Steele moves to suppress all the physical evidence recovered from following his "unlawful" November 21, 2007 arrest based principally on lack of probable cause to arrest him and, therefore, to conduct a (warrantless) search incident to arrest. (Def. at 9). In support of his argument, the defendant has submitted a sworn affidavit in which the defendant attests (in relevant part) that, on November 21, 2007, at about 12:35 p.m., he [1] was in the area of Troy Avenue and Sterling Place, Brooklyn, New York; [2] was "walking on the street"; and [3] "had not committed a robbery." (Declaration of Anthony Steele dated April 14, 2008  1). In the alternative, the defendant requests an evidentiary hearing. (Def at 13). The Court should decline to order an evidentiary hearing to conclude whether the defendant's November 21 arrest was "lawful," and deny his motion.

It is well-settled that a defendant who moves to suppress evidence is not entitled to an evidentiary hearing unless he supports his motion with "moving papers [that] are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992); see also United States v. Roberts, No. 01 Cr. 410, 2001 WL 1602123, *10 (S.D.N.Y. Dec. 14, 2001) (well-settled that defendant is not entitled to hearing simply on filing of motion alleging violation of constitutional rights because motion must be supported by factual basis for alleged violations); United States v. Urena-Pere, No. 91 Cr. 964, 1992 WL 17977, *1 (S.D.N.Y. Jan. 24, 1992) (noting that evidentiary hearing is only required when factual dispute exists and recognizing that in order to create factual dispute, defendant must submit sworn factual allegations from an affiant with personal knowledge); United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) (noting that defendant only has right to a suppression hearing when disputed issues of material fact are

---

subsequent in-court identification of the defendant by witnesses who viewed the array would be nevertheless admissible, pursuant to the five-factor test articulated in Neil v. Biggers, 409 U.S. 188, 199-200 (1972) ((1) witness's opportunity to view defendant at time of crime; (2) witness's degree of attention at time of crime; (3) accuracy of witness's description of defendant prior to identification; (4) witness's level of certainty when identifying defendant at confrontation; and (5) length of time elapsed between crime and confrontation).

Hon. Jed S. Rakoff
April 24, 2008
Page 12

shown); United States v. Jailall, No. 00 Cr. 069, 2000 WL 1368055, *8 (S.D.N.Y. Sept. 20, 2000) ("A defendant is not automatically entitled to a suppression hearing. The defendant must show that disputed issues of material fact exist that require an evidentiary hearing."); United States v. Belin, No. 99 Cr. 214, 2000 WL 679138, *5 (S.D.N.Y. May 24, 2000) (denying motion and request for hearing where defendant failed to submit affidavit containing factual allegations).

  Here, the defendant has failed to put in moving papers or an affidavit sufficiently definite, specific, detailed, and nonconjectural to enable the Court to conclude that there are contested issues of fact going to the validity of the arrest in question. The defendant was arrested on November 21, 2007 on a state complaint, and subsequently indicted. (See Indictment No. 11623/2007, The People of the State of New York v. Steele and Rogers, New York Supreme Court, Kings County, attached hereto as Exhibit A). As to the circumstances of his arrest, the state complaint sets forth that, on November 21, 2007, at approximately 12:35 p.m., at Troy Avenue and Sterling Place in Brooklyn, the defendant robbed a commercial establishment at gunpoint. (See Complaint in The People of the State of New York v. Anthony Steele, New York Supreme Court, Kings County, dated November 21, 2007 ("Nov. 21 Compl."), attached as Exhibit 16 to Defendant Steele's Notice of Supplemental Pretrial Motions). Notably, the defendant's declaration concedes that on November 21, 2007, at approximately 12:35 p.m., he was in or around the intersection of Troy Avenue and Sterling Place in Brooklyn, New York, and that the NYPD stopped and arrested him. Thus, the only fact the defendant has put at issue is whether he committed a robbery on November 21, 2007. (Declaration of Anthony Steele dated April 14, 2008 ("Steele Decl."), at ¶ 1).

  There is nothing about defendant's statement that he "had not committed a robbery," or his moving papers, that is definite, specific, detailed, or nonconjectural. The defendant's statement and sworn affidavit are conclusory and vague. Such ipse dixit is insufficient to warrant an evidentiary hearing, which in essence would be a mini-trial on an issue where a state grand jury has already found probable cause. Moreover, the defendant cites no authority for the argument the state complaint "do[es] not suffice to establish probable cause for the arrest," especially in light of the evidence contained therein and the subsequent indictment (based on probable cause) of the defendant. Furthermore, the state complaint contains a specific and definite identification of the defendant as the robber of Arias Deli Grocery Store. Indeed, Juan Deleon-Herrera, an employee of Arias Deli Grocery Store (the commercial establishment robbed on both September 17, 2007 and November 21, 2007) told the deponent of

Hon. Jed S. Rakoff
April 24, 2008
Page 13

the state complaint that he was robbed at gunpoint by the defendant on both occasions. (Nov. 21 Compl. at 2).

For these reasons, defendant's motion to suppress the physical evidence recovered following his November 21, 2007 arrest should be denied without an evidentiary hearing.

### D. Defendant Steele's Motion to Suppress His November 21, 2007 Statements Requires an Evidentiary Hearing

The defendant next moves "to suppress any statements taken in violation of Miranda, and requests that the government demonstrate that his statements were knowing, intelligent, and voluntary." (Def. at 13). Specifically, the defendant contends that [1] he did not make any statements to the police prior to his being taken to the NYPD precinct, and [2] he was questioned despite his asking for lawyer. (Steele Decl. ¶ 3). As to the defendant's statements following his November 21, 2007 arrest, the Government agrees that an evidentiary hearing is required.

#### 1. Applicable Law

It is well settled that a defendant's spontaneous statements "given freely and voluntarily with any compelling influence" are admissible nothwithstanding the absence of Miranda warnings. United States v. Compton, 428 F. 2d 18, 22 (2d Cir. 1970) (quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966). Indeed "[v]olunteered statements of any kind are not barred by the Fifth Amendment." Miranda, 384 U.S. at 478. See also United States v. Vigo, 487 F. 2d 295 (2d Cir. 1973) (voluntary statement before *Miranda* warnings completely read admissible). And a statement given by a defendant that is not in response to questioning can only be suppressed for failure to provide Miranda warnings where the statement was made in response to the "functional equivalent" of interrogation. In Rhode Island v. Innis, 446 U.S. 291 (1980), the Supreme Court affirmed that Miranda was limited to statements in response to interrogation, and held that a defendant is not "interrogated" by law enforcement unless directly questioned by officers or subject to its "functional equivalent," defined as being subject to statements or actions by law enforcement "reasonably likely to evoke an incriminating response." Id. at 301.[5]

---

[5] As examples of tactics "reasonably likely to evoke an incriminating response," the Supreme Court offered situations in which law enforcement engaged "witnesses" to falsely identify the defendant in a line-up or accuse the defendant of a fictitious

Following <u>Innis</u>, the Second Circuit has affirmed that volunteered statements that are not the product of questioning or its "functional equivalent" are admissible regardless of <u>Miranda</u> warnings. See <u>United States</u> v. <u>Gelzer</u>, 50 F.3d 1133, 1138 (2d Cir. 1995) (affirming district court's decision not to suppress volunteered statement). See also <u>United States</u> v. <u>Grayson</u>, 2005 WL 1560478 (S.D.N.Y. 2005) (Patterson, J.) (suppression not warranted where defendant did not contradict officer's claim that statement was spontaneous); <u>United States</u> v. <u>Medina</u>, 1998 WL 241724, *5 (S.D.N.Y. 1998) (Scheindlin, J.) (officer's comment that seized bag contained "a lot of money" not functional equivalent of interrogation); <u>United States</u> v. <u>Heatley</u>, 994 F. Supp. 475, 477 (S.D.N.Y. 1998) (Sotomayor, J.) (police comment arguably implying case against defendant was strong held not to constitute interrogation). Here, there is no record evidence or suggestion that the defendant was "interrogated" when he gave the above-statements.

2. **Discussion**

Motions to suppress must be definite and specific. And the defendant has only challenged two statements made by the defendant, albeit in the most general terms: one on November 21, 2007 and one on December 3, 2007.

As to the November 21, 2007 statements of the defendant following his arrest for the above-mentioned armed robberies, the defendant challenges the voluntariness of his statements to law enforcement on the basis of [1] a violation of his <u>Miranda</u> rights and [2] his Sixth Amendment right to counsel. As to the <u>Miranda</u> issue, the defendant has put no fact at issue. In relevant part, the defendant states:

> After the police officer arrested me, he brought be to a police precinct. When I got to the precinct, I told the police that I wanted a lawyer. Despite this request, police officers continued to ask me questions.

Steele. Decl. ¶ 3. Noticeably absent from the defendant's affidavit is whether he was informed of his <u>Miranda</u> rights and the circumstances of said questioning. (The defendant was.) Still, the Government agrees that a narrow evidentiary hearing is

---

crime in the hopes of prompting a confession to the crime under investigation. <u>Id.</u> at 291.

Hon. Jed S. Rakoff
April 24, 2008
Page 15

required to resolve the facts relevant to the admissibility of the defendant's November 21, 2007 statements.[6]

As to the December 3, 2007 videotape of the defendant, the Court need not reach the merits. The Government has no intention to offer the videotape at trial. It provided the videotaped statement of the defendant pursuant to its continuing Rule 16 discovery obligations.

### E. Defendant Steele's Motion for Severance Should be Denied

Defendant Steele also moves for an order severing his case from his co-defendant Zachary Ballard. (See Memorandum of Law in Support of Defendant Anthony Steele's Pretrial Motions Pursuant to Rule 12(b), Fed. R. Crim. P. dated March 25, 2008 ("Def. Mem."), at 13). (Notably, only defendant Steele has moved for for an order severing his trial from his co-defendant Anthony Ballard in this case.) This motion is without merit and should accordingly be denied.

#### 1. Applicable Law

The Supreme Court has made plain that there is a "preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993); see Fed. R. Crim. P. 8(b). This preference reflects a settled precept in criminal law:

> Joint trials "play a vital role in the criminal justice system." Richardson v. Marsh, 481 U.S. 200, 209 (1987). They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Id. at 210.

Zafiro, 506 U.S. at 537. Joint trials of defendants indicted together also serve to "conserve prosecutorial resources, diminish inconvenience to witnesses, and avoid delays in the

---

[6] Should the Court agree that an evidentiary hearing is necessary, the Government respectfully requests that any such hearing be narrowly circumscribed to the November 21, 2007 statements alone, and that the Government only be required to provide 3500 Material that bears on the defendant's November 21, 2007 arrest and statements.

administration of criminal justice." <u>Richardson</u>, 481 U.S. at 217 (Stevens, J., dissenting).  The <u>Richardson</u> Court explained:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.  Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability — advantages which sometimes operate to the defendant's benefit.  Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

<u>Id</u>. at 210 (footnote omitted).  Thus, even where joint trials invite some prejudice to defendants, "[t]he risks of prejudice attendant in a joint trial are presumptively outweighed by the conservation of time, money, and scarce judicial resources that a joint trial permits."  <u>United States</u> v. <u>Jimenez</u>, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).

      Rule 14 of the Federal Rules of Criminal Procedure permits severance in certain limited circumstances.[7]  However, the presumption in favor of joint trials is so strong that the Second Circuit has stated that "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial."  <u>United States v. Rosa</u>, 11 F.3d 315, 341 (2d

---

[7]    Rule 14 provides in pertinent part:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

Hon. Jed S. Rakoff
April 24, 2008
Page 17

Cir. 1993). A defendant seeking severance therefore shoulders the "extremely difficult burden" of showing that he would be so prejudiced by joinder that he would be denied a fair trial. United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989) (internal quotation marks omitted). It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]." Zafiro, 506 U.S. at 540. Instead, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539; see also United States v. Panza, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials").

Such instances include, for example, when evidence of wrongdoing was admissible only against one of the defendants; where defendants at a joint trial have markedly different levels of culpability; or where a co-defendant's statement technically admissible only against a co-defendant was also probative of the defendant's guilt. Zafiro, 506 U.S. at 539. Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Id. at 539 (citing Richardson, 481 U.S. at 211); see also United States v. Freyer, 333 F.3d 110, 114 (2d Cir. 2003).

The presumption in favor of joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998). "[T]he cases are legion that there is a strong public interest in joint trials where, as here, the defendants are both charged in the same conspiracy." United States v. Pirro, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999); see also Freyer, 333 F.3d at 114 (holding that joinder of defendants is "proper when the alleged acts are 'unified by some substantial identity of facts or participants and a common plan.'" (quoting United States v. Attenasio, 870 F.2d 809, 815 (2d Cir. 1989))); United States v. Bin Laden, 109 F. Supp. 2d 211, 214 (S.D.N.Y. 2000) ("When more than one defendant is accused of participating in the same act or transaction or series of acts or transactions, federal law expresses a strong preference for a single, joint trial of all defendants." (footnote omitted)).

In conspiracy cases, especially, any claim of "prejudicial spillover" does not justify severance because the evidence would be admissible at a separate trial of the moving

defendant. As the Second Circuit has recognized:

> the fact that testimony against a codefendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately. Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial.

Rosa, 11 F.3d at 341 (citations omitted). Rather, undue "prejudice" may occur "when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper. This is an unlikely occurrence when all the defendants are charged under the same conspiracy count." Salameh, 152 F.3d at 115 (citation omitted).

### 2. Severance Is Not Appropriate in this Case

Only defendant Steele argues for severance on the ground he will each suffer "prejudicial spillover" from the fact that [1] 404(b) evidence the Government "might" introduce against defendant Ballard would "prejudice" him, and [2] the Indictment charges one armed robbery in which Steele did not participate. (Def. Mem. at 17)

Defendant Steele fails to acknowledge that each defendant is implicated in the bulk of the criminal conduct charged in the eleven-count Indictment, and by no means will Steele suffer prejudicial spillover at a joint trial.

Moreover, each defendant is accused of participating in acts that are undoubtedly "'unified by some substantial identity of facts or participants and a common plan.'" See Freyer, 333 F.3d at 114 (quoting Attenasio, 870 F.2d at 815). The evidence will show that each robbery was committed in a strikingly similar fashion, and each such robbery involved many of the same participants. Additionally, evidence of each robbery (including the substantive robberies with which Steele and Ballard are not charged) constitutes evidence of the armed robbery conspiracies, in which Steele and Ballard are charged. As such, evidence of all the robberies be admissible to prove the conspiracies charged in the Indictment, regardless of whether defendants' cases are severed. See United States v. Rosa, 11 F.3d at 341 ("Evidence at

the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial."); United States v. Neresian, 824 F.2d 1294, 1304 (2d Cir. 1987) (holding that where there is sufficient evidence to show the existence of a conspiracy, the Government is "entitled to show the entire range of evidence of the conspiracy against each [defendant]." ).[8]

If it were later determined that any actual prejudicial spillover might arise, that could be cured by instructions to the jury. Zafiro, 506 U.S. at 540; see also Freyer, 333 F.3d at 114; United States v. Chang An-Lo, 851 F.2d 547, 556 (2d Cir. 1988) (denying severance where "the evidence with respect to each of the defendants was adequately straightforward that the jury could consider it without any significant spillover effect"). This case does not involve complicated facts; the evidence will be straightforward enough for the jury to consider it without any significant spillover effect.

Finally, even assuming that a particular defendant is somehow prejudiced by joinder with a codefendant, the standard under Federal Rule of Criminal Procedure 14 is not whether there is any prejudice, but whether that prejudice "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." United States v. Panza, 750 F.2d at 1149. The presumption in favor of joint trials thus "conserves judicial resources, alleviates the burden on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony in a series of trials." United States v. Lyles, 593 F.2d 182, 191 (2d Cir. 1979) (internal quotation marks omitted); United States v. Corr, 543 F.2d 1042, 1052 (2d Cir. 1976).

Because most, if not all, of the evidence that would be admitted at a joint trial would also be admissible in a separate

---

[8] It is true that the testimony of some witnesses will serve to link one, but not all, defendants to the conspiracies charged in the Indictment. Much of that evidence, however, would be admissible at a separate trial of Steele or Ballard to prove the existence of the charged conspiracies. In any event, "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." United States v. Carson, 702 F.2d 351, 367 (2d Cir. 1983). This is particularly the case where the court instructs the jury to consider the evidence against each defendant separately and issues limiting instructions as appropriate. See id.

Hon. Jed S. Rakoff
April 24, 2008
Page 20

trial of either Steele or Ballard, separate trials would result in an enormous duplication of effort, wasting judicial resources. Moreover, severing either defendant's case would not save any substantial time in either those defendants' cases or the other defendants' trial.

Thus, severing the defendants will waste judicial resources, increase the burden on citizens serving as jurors, and necessitate having witnesses reiterate the same testimony in two lengthy trials. Cf. Lyles, 593 F.2d 182, 191 (2d Cir. 1979) (citing these three issues as the reason for the presumption against severance). Severance in this case would run afoul of the warning of the Supreme Court in Richardson, 481 U.S. at 210, by impairing the efficiency of the criminal justice system in requiring prosecutors to "present[] the same evidence again and again[,] . . . randomly favoring the last-tried defendants." Accordingly, defendant Steele's motion for severance should be denied.

### Conclusion

For the reasons set forth above, all (but one) of defendant Anthony Steele's motions should be denied without the need for any evidentiary hearing. The Government concedes that a narrow evidentiary hearing is required to resolve the facts relevant to the admissibility of the defendant's November 21, 2007 statements.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
BENJAMIN A. NAFTALIS
Assistant United States Attorney
(212) 637-2456

cc:  Joshua L. Dratel, Esq. (by fax: 212-571-3792)
     Martin Geduldig, Esq. (by fax: 516-228-3559)